### HARRIS v. ROSS, Commanding Officer, Fort McPherson.

#### No. 2020 H. C.

District Court, N. D. Georgia, Atlanta Division.

Sept. 8, 1944.

Ralph C. Brown, of Atlanta, Ga., for petitioner.

M. Neil Andrews, U. S. Atty., Harvey H. Tisinger, Asst. U. S. Atty., Maj. Reid B. Barnes, JAGD, U. S. Army, and Maj. Myron Nailling, JAGD, U. S. Army, all of Atlanta, Ga., for respondent.

RUSSELL, District Judge.

Petitioner, after induction into the Army, seeks to be released therefrom by the writ of habeas corpus, predicated upon his contention that the action of his Local Draft Board classifying him 1–A was arbitrary and that the classification is not supported by the evidence, and that the Board has been unfair and abused its discretion by a finding contrary to the facts. He contends that, as a duly ordained minister of religion in the terms of the Selective Training and Service Act of 1940 and regulations thereunder, he should be classified in class 4–D.

Return was made by the Commanding Officer of Fort McPherson, Georgia, where the petitioner is serving as a member of the Army, and the petitioner produced in open Court.

Upon the hearing petitioner's counsel chose to confine his claim to relief to the single ground that as the petitioner was a Counsellor in the independent branch of the Church of Christ of the Latter Day Saints at Waycross, Georgia, and had been duly ordained as such, he was ipso facto entitled to classification in class 4–D and that therefore any other classification was of necessity arbitrary as a matter of law. Petitioner presented as a witness the President of the Southern States Mission of the Church of Jesus Christ of the Latter Day Saints who testified that there was an independent branch of the Church at Waycross and that the petitioner was a Counsellor to the President of the branch and had served in that capacity during the year that the witness had presided over the Mission and that "as far as I know he has been performing his duties * * * as a Minister." Upon cross examination the witness testified to the effect that he

had no personal knowledge of any services which had been performed by the petitioner but that he had heard no complaints, but he didn't know of any meetings that he has presided over. Over the objection of the petitioner's counsel the Court permitted examination of the witness as to the organization of his Church, and from this it appears that the Waycross Church was organized in accordance with the discipline of the Church and with the petitioner as one of the Counsellors. To the question "And you don't know, to your own knowledge, whether this man ever functioned or exercised his jurisdictional feature of Counsellor over the Church. To your own knowledge, you don't know whether he has done it one time." The answer was: "No, only that it has been reported that he is doing his duty." The witness further testified that in his Church there were no paid ministers and that each President and Counsellor was customarily engaged in some other gainful occupation as a means of livelihood. The petitioner did not testify as a witness and there was no further testimony in his behalf.

The respondent tendered in evidence the Selective Service file of the petitioner from which it appeared that in his questionnaire petitioner stated that his occupation was that of a clerk in a retail liquor store and that he had been engaged in that kind of work for three and one-half years. Under the statement of "Series VIII * * * Minister or Student Preparing for the Ministry," he answered: "I am a Priest of religion. I do customarily serve as a Priest. I have been a Priest of the Church of Jesus Christ of Latter Day Saints since February 19, 1941. I have been formally ordained as a Priest at Waycross, Georgia. If so, my ordination was performed on February 19, 1941." This questionnaire was dated and sworn to on the 13th day of May 1941. In his occupational questionnaire filed October 27, 1942, petitioner stated the title of his present job as "clerk in a liquor store." On May 24, 1941, the Local Board classified the registrant in Class 3–A and no appeal was taken therefrom. On May 3, 1944, petitioner was reclassified by his Local Board and placed in Class 1–A, the minutes reciting "considered for 4–D but rejected account registrant operates liquor store six days week." The file likewise discloses that on May 17, 1944, petitioner was "denied deferment," and on May 18, 1944, petitioner appealed his classification to the Board of Appeal which board on June 11, 1944, continued the classification of 1–A made by the Local Board. It is alleged in the return, and not contradicted, that following the request for a personal appearance, the petitioner appeared before the Local Board in person and "said Board reviewed and reconsidered his case and on May 17th, 1944 continued his classification in 1–A; that at the time of his said reclassification there was no evidence before said Local Board that his status in so far as his right to claim exemption under section 305(d) of the Selective Training and Service Act of 1940 as amended, or the regulations thereunder, had changed since the first classification in 3–A."

Under the provisions of section 5(d), 50 U.S.C.A.Appendix, § 305(d), "Regular or duly ordained ministers of religion * * * shall be exempt from training and service (but not from registration) under this Act." By the terms of Selective Service Regulation 622.44(c) a "duly ordained minister of religion" is defined as "a man who has been ordained in accordance with the ceremonial ritual or discipline of a recognized Church, religious sect, or religious organization, to teach and preach its doctrines and to administer its rites and ceremonies in public worship; and who customarily performs those duties." Section 10(a) (2) of the Act, Title 50 U.S.C.A.Appendix, 310(a) (2), vests power in the local draft boards "to hear and determine, subject to the right of appeal to the appeal boards herein authorized all questions of claims with respect to inclusion for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe." Considering the terms of the statute, and the regulations thereunder, it appears clearly that while Congress has provided an exemption for duly ordained ministers of religion, these, being required to register, are within the jurisdiction of their respective local boards and consequently as to any particular registrant, his claim to exemption is required to be determined by his local board as a matter of fact. United States

ex rel. Trainin v. Cain, 144 F.2d 944, decided August 15, 1944, United States Circuit Court of Appeals, Second Circuit. It follows that the petitioner shows no right to release from the Army merely by proof, in this Court only, of the fact that he is an ordained minister of religion within the terms of his discipline, even if the proof was sufficient to show that he was not only ordained but also "customarily performed" the duties of such a minister of religion, as to which latter the proof is here lacking. Therefore one who may be able to adduce testimony of regular ordination and the performance of the customary duties consequent thereto, would not conclusively establish as a matter of law his right to exemption, for the board could well be possessed of knowledge of facts which would controvert or dispute the showing made by the registrant. In short, the classification of one who claims to be a minister of religion, and the prosecution by such a person of a claim for relief from an improper or arbitrary classification, is subject to the requirements of the regulations, the statute and principles of jurisprudence, which apply to all registrants. It follows that the petitioner shows no ground for relief merely by producing evidence to the Court that he is a duly ordained minister of religion, for the basis for any exercise of power by this Court must be found, not upon one fact which may be established here, but upon determination in this proceeding that the local board acted arbitrarily, without· any evidence to support its finding, or denied to petitioner, as a registrant, the fair hearing to which he is entitled in order to have due process of law.

No complaint is made that the board did not permit the petitioner to appear before it and present any argument or facts which he desired. Thus it may be assumed that he was accorded a full and fair hearing and that the board considered all pertinent information. From the facts presented by the present record, this Court is asked to order the release of the petitioner from the Army solely upon what is contended is the undisputed proof that the petitioner is a duly ordained minister of religion, and without regard to any other facts. This is the extent of the proof submitted by the petitioner.

 Petitioner is represented by counsel, and upon the hearing he was ques-

tioned by the Court: "Well do you realize that you have presented no evidence to the Court which would enable the Court to determine what evidence, or lack of evidence there was presented to the Draft Board? Do you realize that the Court has no knowledge, as a matter of fact, or actual fact of what was presented to the Draft Board which you contend resulted in an arbitrary and capricious acts?" Response by Counsel: "The fact that we have shown here, the man is a minister of the Gospel, and that the board was aware of that, they were aware of his connection with the Church. They knew of his connection with the Church. He had so advised them of it." While he was of course not required to testify, his failure to do so, though present, authorizes the assumption that there was nothing shown to the board with reference to his ministerial status other than proof that he had been ordained as an Elder. In view of the fact that the President of the Southern States Mission had no direct knowledge that petitioner had customarily performed the duties of his position, the absence of any testimony to this effect in the record is significant and entitled to great weight. However, this discussion might be construed to proceed upon the idea that this Court has the right to substitute its judgment as to the proper classification for that of the draft board, but clearly no such right exists in a proceeding such as this and where by the terms of the statute the determination of the draft boards are made final, the scope of judicial examination of the board's action is narrowly limited. See Trainin v. Cain, supra and the cases cited.

 For the reasons stated, the petitioner, having failed to successfully maintain his contention that proof of the fact of ordination ipso facto required as a matter of law his classification in 4–D, the remaining question is whether the facts shown here are sufficient to establish that the action of the board was arbitrary because unsupported by any evidence. So far as appears from the evidence here, the only fact brought to the attention of the board was that contained in Series VIII of the petitioner's questionnaire. Opposed to this is the fact that after classification as 3–A, no objection or claim for classification as a minister was made until petitioner was reclassified as 1–A, and thus

approached induction. The board also had before it the fact of the six day a week occupation of the petitioner at other than ministerial duties he may have performed ('but which, as stated, are not made to appear). Therefore, without regard to the nature of the occupation, or whether the ministers of such Church regularly perform secular work, as so well stated in the Trainin case, supra, supported by the authorities there cited, while the two positions may not be mutually exclusive, and a validly exempt minister of religion might work six days a week at another occupation, even, it may be conceded as a' clerk in a liquor store, "the existence of the latter can be taken into consideration in determining whether registrant is in fact a regularly practicing minister."

Under the facts here presented, it is found that the petitioner wholly fails to support his claim of arbitrary action by the draft board so as to authorize the grant of the relief prayed.

Permission was granted petitioner to present a duplicate of his certificate of ordination. This has been filed and considered. It requires, for the reasons stated above, no different finding. However, it may be remarked that the certificate presented is not that referred to and set forth by the petitioner in his answer to his questionnaire. There the date was given as February 19, 1941, and the ordination as a "Priest" of his Church, whereas it appears from the duplicate certificate that he was ordained as an "Elder" on July 12, 1942. Inconsistencies such as these are likewise matters that might have been considered by the board. In any event, however, for the reasons stated, the production of a certificate of ordination is not in itself sufficient to show that classification by a draft board of the holder of such certificate in other than the ministerial classification is arbitrary or capricious, or without any support in the evidence. It must be recognized that in the very nature of things, many facts and circumstances are within the knowledge of the draft board and induce action by them. For this reason it is a salutary rule that strictly confines the scope of judicial examination of their action and requires one seeking to overturn it to prove clearly that the action of the draft board was contrary to all established concepts of procedure applicable in such an instance.

Petitioner relies heavily upon the opinion of National Headquarters, Selective Service System, Volume 3, Opinion No. 23, question and answer No. 4, which states that Counsellors of independent branches of the Church of Jesus Christ of Latter Day Saints "may be considered ministers of religion within the meaning of the Selective Training and Service Act of 1940 and Selective Service Regulations, and may be placed in Class IV–D so long as they hold those positions." This opinion, apparently correct, requires no different holding in this case. It still remains incumbent upon the petitioner to show, not that he could have reasonably been found to come within the terms of the statute, regulations and opinion, but that under the circumstances existing no other determination was legally permissible. This he has failed to do.

It is therefore considered, ordered and adjudged that the writ of habeas corpus heretofore issued be discharged, and that petitioner be remanded to the military custody of his present Commanding Officer to the same extent as existed before the issuance of the writ.