**UNITED STATES of America,**
**Appellee,**

v.

**Grafton Earl STEWART, Appellant.**

**No. 8904.**

United States Court of Appeals
Fourth Circuit.

Argued June 3, 1963.

Decided Aug. 5, 1963.

Victor V. Blackwell, Covington, La. (William O. Goldstein, Baltimore, Md., and Hayden C. Covington, Brooklyn, N. Y., on brief), for appellant.

Daniel F. McMullen, Jr., Asst. U. S. Atty. (Joseph D. Tydings, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

Appellant, Grafton Earl Stewart, appeals from his conviction for violation of the Universal Military Training and Service Act of 1948, § 12, 62 Stat. 622, 50 U.S.C.A.App. § 462, for failure to obey an order of his local draft board to appear before it for assignment. Stewart, a member of the Jehovah's Witnesses, asserts that his conviction was based on the local selective service board's failure properly to grant him a IV–D classification as a minister of religion. Such a

classification would have exempted Stewart from an obligation to serve. 50 U.S. C.A.App. § 456(g).

On January 8, 1957, Stewart was placed in Class 1–0 as a conscientious objector to participation in war. The local board reopened and reconsidered his classification on April 12, 1960, and again classified him in Class 1–0. The appeal board affirmed. Ordered to report to the local board for assignment to perform hospital work at the Crownsville State Hospital, Crownsville, Maryland, Stewart failed to appear, and indictment and conviction followed.

Stewart's claim of ministerial status arises out of his activities in connection with his membership in the Jehovah's Witness Sect. As are apparently all Jehovah's Witnesses, Stewart is an ordained minister. He attends the Easton Congregation of Jehovah's Witnesses, Central Unit, Easton, Maryland, and dedicates about 170 hours per month to religious duties—visiting and aiding persons interested in Bible study, presiding over Bible study meetings, supervising and aiding public distribution of religious tracts, and taking charge of a local ministry school. He is not the leader of the Easton Kingdom Hall, but is rather one of the many church workers to be found in each Jehovah's Witness Congregation. In completing a classification questionnaire in 1956, Stewart indicated that in addition to his religious activities, he worked an average of 40 hours per week as a carpenter, receiving $1.00 per hour. Although he stated that the job was temporary and that he would begin full time ministry in 1957, Stewart indicated in 1960 that he had been working eight hours a day for nearly three years as a laborer and trucker with a dry cleaning concern.

The sole issue in this appeal is the propriety of the board's refusal to grant defendant a IV–D classification.

50 U.S.C.A.App. § 454(a) provides that "[e]xcept as otherwise provided * * * every male citizen * * * who is between the ages of 18 years and 6 months and 26 years * * * shall be liable for training and service in the Armed Forces * * *." Among the "otherwise provided" are "[r]egular and duly ordained ministers of religion". 50 U.S.C.A.App. § 456(g).

50 U.S.C.A.App. § 466(g)(3) provides that:

> "The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister * * but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

This provision contains the meat of several provisions inserted by Congress to insure that there "be no misunderstanding of the fact that the exemption granted is a narrow one, intended for the leaders of the various religious faiths, and not for the members generally. * * *" Sen.Rep. No. 1268, 80th Congress, Second Sess., May 12, 1948, p. 13. The same reference indicates that Congress was attempting to forestall "claims of members of one particular faith that all of its members were ministers of religion". Ibid.

A registrant attempting to convince the board of his ministerial status is, therefore, faced with a triple burden. He must first convince the board that the objective facts upon which he bases his claim are accurate, a burden much lightened by the Supreme Court's opinion in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The claimant must then convince the board that the objective facts fall within the congressional definition of minister as one who regularly preaches and teaches the principles of religion and administers the ordinances of public worship according to the religion's or sect's principles. In this regard, the claimant must show that he is a leader and not

merely an active member of his sect. Finally, the claimant must convince the board that he performs his religious duties as a vocation, rather than as an avocation.

■ As to the first step in the burden mentioned above, the undisputed proof of the objective facts of claimant's activities are not to be disregarded by the board unless it builds a record of fact sufficient to establish a basis for rebuttal. Dickinson v. United States, supra; Cf. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955). This is so despite the very narrow scope of judicial review provided for draft board orders, a review limited to a decision as to whether the board had a "basis in fact" for its decision. Witmer v. United States, supra; Dickinson v. United States, supra; Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946); United States v. Cole, 315 F.2d 466 (4 Cir. 1963); Osborn v. United States, 319 F.2d 915 (4 Cir. 1963). As there is no contradictory proof in the instant record, and as the government does not oppose his version of the material facts, Stewart must be held to have carried his burden of proving the objective facts of his claim. Dickinson v. United States, supra; Cf. United States v. Cole, supra.

■■ The second step in the burden mentioned above is a mixed question of law and fact rather than one of fact alone. The issue is whether the objective facts asserted by the appellant qualify him as a religious leader of his flock within the definition of minister intended by Congress. Dickinson v. United States, supra; see Sen.Rep. No. 1268, 80th Congress, Second Sess., supra. The trial court found that the objective facts adduced by the claimant permit the board to find that Stewart is not a leader. With this determination we agree. The board had ample basis to find that Stewart's status in his religious group is not that of one who regularly teaches and preaches the principles of religion *and* administers the ordinances of public worship.

Stewart's role is little more than that of all the other members of his sect: that of spreading among the public the beliefs of Jehovah's Witnesses, and of educating those already believers in the ways of the faith. Despite the fact that Stewart is authorized to so do, there is no convincing proof that it is a part of his regular task to administer the ordinances or the "rites and ceremonies" of public worship. 50 U.S.C.A.App. § 466(g) (1) and (3). We must, therefore, hold that the board's order had a basis in fact.

We are not persuaded to a different conclusion by the cited authorities. In Wiggins v. United States, 261 F.2d 113 (5 Cir. 1958), cert. denied, 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676 (1959), the court pointed out that the amount of time spent in religious activity was not conclusive. There the court found that the undisputed evidence would support the conclusion that Wiggins had shown "that he stood in the relation of a religious leader to other members of his faith, in a capacity comparable to that of an assistant pastor". Here the record discloses an evidential basis for a contrary view although conceivably this board could also have found Stewart to be a minister within the meaning of the Act. There the board was clearly under the erroneous impression that to qualify as a minister under the Act one must be paid for his ministry. Again in United States v. Hurt, 244 F.2d 46 (3 Cir. 1957), the court found that there was no basis in fact for the board's conclusion. We are not compelled to disagree with the law as laid down in those cases to reach a conclusion that we must support the board in this case.

In Dickinson v. United States, supra, the defendant was a Company Servant, a position that, to some extent, approximates that of the ordinary minister. Not only did he engage in the normal missionary tasks common to many members of the Jehovah's Witnesses, but he also conducted the public meetings of the congregation. The court held him entitled to the exemption as he met "the vital test of regularly, as a vocation,

*teaching* and preaching the principles of his sect *and* conducting public worship in the tradition of his religion". 346 U.S. at 395, 74 S.Ct. at 157 [emphasis supplied]. The importance of the performance of the ordinances of public worship is emphasized by the purpose for the exemption, which was that the Act should not "leave a congregation without a cleric". Ibid.

This determination makes it unnecessary for us to decide whether the board could have found, on the record before it, that Stewart's work for his religion was not his vocation. It is true that the mere fact of secular labor does not permit the board to deny the exemption automatically, Dickinson v. United States, supra, but at some point on the scale the relative amount and type of secular activity may permit such a decision. Dickinson v. United States, supra, 346 U.S. at 395, 74 S.Ct. at 156, 157; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Leitner v. United States, 222 F.2d 363 (4 Cir. 1955); Smith v. United States, 157 F.2d 176 (4 Cir. 1946), cert. denied, 329 U.S. 776, 67 S.Ct. 189, 91 L.Ed. 666 (1946). We, however, find it unnecessary to reach this issue.

Affirmed.