**UNITED STATES of America,**

v.

**Angel M. PLANAS, Defendant.**

**No. 63 Cr. 746.**

United States District Court
S. D. New York.

Feb. 24, 1964.

**804**

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, New York City, for United States; Ezra H. Friedman, Asst. U. S. Atty., of counsel.

Herman Adlerstein, New York City, for defendant.

WEINFELD, District Judge.

The defendant is charged with failure, neglect and refusal to perform a duty imposed upon him by the Universal Military Training and Service Act.[1] He registered under the Act in May, 1955. In his questionnaire he claimed exemption as a minister of Jehovah's Witnesses; subsequently he also claimed exemption from combatant and noncombatant training services as a conscientious objector. Initially both claims were rejected and he was classified 1–A; however, after several investigations, appeals and rehearings, only his conscientious objector claim was upheld and he was reclassified 1–O in March, 1962, almost seven years after his original classification. The denial of his claim for total exemption as a minister of religion was adhered to and the issue here presented revolves about that determination.

After his 1–O classification, the defendant was ordered to and did report to the Rockland State Hospital on December 3, 1962 to perform civilian work for two years in lieu of induction into the Armed Forces. He discharged his assigned duties there until May 12, 1963, when (and it is so stipulated) he deliberately and purposely absented himself without official leave and continued to do so until the filing of this information on September 4, 1963.

The defendant resists the charge on the ground that he was unlawfully denied exemption as a minister of religion under section 6(g) of the Act.[2]

The scope of review by this Court is severely limited—essentially it is whether the Local Board's denial of his claim for IV–D classification [3] was without basis in fact—a matter to be determined

---

1. 62 Stat. 604 (1948), as amended, 50 U.S.C. App. §§ 451–73 (1958).

2. 62 Stat. 611 (1948), as amended, 50 U.S.C. App. § 466(g) (1958).

3. 32 C.F.R. § 1622.43 (1962).

upon the defendant's Selective Service file.[4] The basic issue before the Board was whether the defendant met the statutory definition of a "regular or duly ordained minister of religion," as set forth in section 16(g) of the Act[5]—more precisely—whether his religious activities were performed as a vocation rather than as an avocation. Section 16(g)(1) and (2) of the Act sets up criteria to determine who is a "regular or duly ordained minister of religion." Subdivision (3) spells out those who, even though engaged in ministerial activities, are not embraced within the definition:

"The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

In considering the issue here presented, the Court, as required, has examined and studied each document in the defendant's file, a fairly voluminous one, extending over a seven-year period.

On February 15, 1961, while the defendant was still classified 1-A, despite a previous appeal, his case was ordered reopened by the Director of Selective Service for reconsideration of his classification.[6] The defendant then filed with the Local Board Form No. 54, bringing up to date his conscientious objector and minister of religion claims. At that time he was regularly employed, as he had been for the previous three years, as a nurses' aid by a municipal hospital in New York City, where he worked at least forty hours per week. In his Form 54 questionnaire he stated he was an Assistant Congregation Servant, Book Study Conductor and Watchtower Study Conductor of the Bronx Spanish Unit; that he was not a Pioneer; that he devoted "about 15 hours per month" to preaching and teaching the principles of religion. In answer to the inquiry as to all ministerial duties performed by him in the previous month and the hours devoted to each, he replied he had "been assigned to deliver a public lecture * * * [and] participated in the ministry School as a speaker and also on the program of the Service meeting on Thursdays. I have devoted various hours to the preparation of these parts.* [footnote] * How much time a [sic] do not remember." He also said that he devoted at least "15 or more hours" to distributing literature in the previous month. Thus the total of all time devoted to preaching, teaching and other religious duties, according to his own statement, totalled thirty or more hours per month, or seven hours per week. The Form 54 questionnaire was supported by certificates of appointment to the congregational positions, together with a statement signed by seventy-five persons attesting to his activities in the Bronx Spanish Unit.

On April 12, 1961 the defendant appeared at the Local Board for an interview and then stated that he "devotes 15 to 20 hours monthly preaching activity from house to house, revisiting and conducting Bible studies [and] also devotes considerable time at home to Bible study & preparing for Bible talk and Lectures to Various Groups." He was shown the

---

4. Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Cox v. United States, 332 U.S. 442, 445, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946).

5. 62 Stat. 624 (1948), as amended, 50 U.S.C. App. § 466(g) (1958).

6. 32 C.F.R. § 1625.3 (1962).

Form 54 and reaffirmed the answers given therein. The Board continued the defendant's 1–A classification and again he appealed. During the course of the appeal and proceedings relative thereto, the defendant again made various statements which are pertinent on his present contention. Thus, on May 10, 1961, at a hearing before the Board, he stated there had been no change in the facts since the interview of April 12, 1961. He appeared before a Government Appeal Agent on June 7, 1961. The Agent's Statement of Facts following the appearance sets forth the defendant's claim at that time that he devoted approximately twelve hours a week to his various activities, as follows: eight hours as an Assistant Congregation Servant, consisting of "mostly record keeping"; two hours as a Watchtower Study Servant, leading group discussions on Sundays of the various studies appearing in Watchtower Magazine; and two hours as a Book Study Conductor, discussing with smaller study groups in individual homes various books published by the Watchtower Society. The foregoing services did not include approximately fifteen hours weekly spent by the registrant as a publisher in spreading the Gospel of Jehovah's Witnesses. Thus, according to this statement, a total of twenty-seven hours a week was spent on all the functions. However, the defendant again examined his Form 54 statement and found it effective without any change as of the date of the interview, June 7, 1961. We shall again refer to the Appeal Agent's Statement since the defendant places great store upon the references contained therein.

The Appeal Board, on July 21, 1961, tentatively determined that the registrant was not eligible for classification either in Class 1–O or Class IV–D and sought an advisory recommendation from the Department of Justice, as required by section 6(j) of the Act.[7] After a further investigation, the Department of Justice, on January 22, 1962, recommended to the Appeal Board that the defendant's conscientious objector claim be sustained and that he be classified in Class 1–O which classification, as already noted, was accorded to him by the Board on March 28, 1962. The denial of his ministerial exemption claim was continued.

The last-mentioned Department of Justice advisory report emphasized that in February or March, 1959 defendant had been replaced as the Congregation Servant of the Bronx Spanish Unit, and thereafter had acted as Assistant Congregation Servant of the Unit, which position he still held in September, 1961 at the time of the investigation. It also noted that the Congregation Servant to whom the defendant acted as assistant stated that he and the defendant worked practically every night fulfilling their church responsibilities; that the defendant oversaw the door to door services of the other members of the church; and that he had expressed a desire to become a full-time minister. As required by the rules,[8] a copy of the recommendation of the Department of Justice with its various remarks, including references to the hours, nature and extent of his duties as a Jehovah Witness, was submitted to the defendant, who responded that he had no comment to make thereon. The foregoing report by the Department of Justice appears to contain the most recent statement by the defendant—hereafter referred to—touching upon his ministerial activities and the nature and extent thereof.

Thus the issue which confronted the Board following the filing on February 16, 1961 of the claim for IV–D classification was whether upon the record the defendant satisfied the statutory requirement that his religious activities were regularly performed and constituted his vocation, the burden of establishing which was upon the defend-

7. 62 Stat. 612–13 (1948), as amended, 50 U.S.C. App. § 456(j) (1958); 32 C.F.R. § 1626.25 (1962).

8. 32 C.F.R. § 1626.25(e) (1962).

ant.[9] The issue before this Court is whether there was any basis in fact for the Board's determination for the denial of his claim for ministerial exemption. And in deciding this narrow issue the Court's function is not to weigh the evidence to determine if the classification was justified or to apply any test of substantiality of evidence.[10]

We start with the premise that part-time half-time, occasional or irregular preaching, teaching and other ministerial functions do not meet the statutory requirement for exemption.[11] While it is recognized that the statutory definition of "a regular or duly ordained minister of religion" does not foreclose all secular employment, the extent and nature of such activities, when taken together with the registrant's entire record, may give support to the Board's finding that a registrant failed to meet his burden—indeed, when so considered, it may affirmatively indicate that his regular and basic activities and vocation are other than as claimed.[12]

At the outset there is the significant fact that over a period of three years preceding the denial of his claim for IV–D classification, the defendant was regularly employed as a nurses' aid, which employment required attendance at a hospital of not less than forty hours per week. And while this does not, in and of itself, negate the defendant's claim for ministerial exemption, the regularity and substantiality of the hours required for that employment have bearing on whether the defendant's religious activities are on a part-time or regular basis.

Next, there is the SSS Form 54, which may be termed the basic document, submitted by the defendant in February, 1961 in support of his claims for exemp-

tion when their reconsideration was ordered. He then stated the outer limits of his teaching and preaching activities as about fifteen hours per month and another fifteen hours per month in distributing literature. The extent of these activities was reaffirmed by the defendant in substance on at least three subsequent occasions. The maximum amount of time devoted to all ministerial activities, as set forth in these various statements and reaffirmations, ranges between thirty and thirty-five hours per month. In addition to the foregoing, the defendant stated he spent time in preparation for his ministerial duties, but could not recall how much. His counsel now urges that time necessarily spent in study and preparation for his preaching and classes be considered. The difficulty with this position is that the record is silent as to the extent of such preparation, and the determination as to whether there was any basis in fact for the Board's ruling must be made upon the record.

The defendant, however, claims that his file reflects he was engaged not less than twenty-seven hours per week in the discharge of his ministerial duties and he met the criteria under the statute. This contention rests upon a statement attributed to the defendant by the Government Appeal Agent in his report to the Appeal Board on June 9, 1961, already referred to. The Appeal Agent there set forth that the defendant claimed he spent approximately twelve hours per week on his ministerial duties, which did not include approximately fifteen hours a week devoted by him in spreading the Gospel of Jehovah's Witnesses. Whether the statement attributed to the defendant by the Appeal Agent was an error of the Agent, or in fact was made by the defendant, it is in-

9. Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

10. Witmer v. United States, 348 U.S. 375, 380–81, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

11. Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

12. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Cox v. United States, 332 U.S. 442, 451, 68 S.Ct. 115, 92 L.Ed. 59 (1947). Cf. United States v. Stewart, 322 F.2d 592 (4th Cir. 1963).

consistent with other statements by the defendant in his SSS Form 54 and, as already noted, reiterated by him on three subsequent occasions. Significantly, the reference by the Appeal Agent is in effect also contradicted by his very report wherein he incorporates by reference the SSS Form 54, which he notes was shown to the defendant, who found it effective without any change as of that date, June 9, 1961. It is also contradicted by the defendant's final independent statement on the subject made on December 11, 1961 to a Hearing Officer "that he spends from 15 to 20 hours a month in house to house preaching and canvassing; that he conducts an organized Bible study on Tuesdays at the home of his wife's parents; that he attends Ministerial School on Thursdays, and is a Public Watchtower Lecturer on Sundays at Kingdom Hall." The inconsistencies as to the extent of the defendant's activities permitted the Board to accept one version and reject the other [13] or even both versions, since the verity of his statements was drawn in issue, and its resolution of the conflict on this essential matter is not subject to judicial review.

The time allegedly devoted by defendant to his activities as a Jehovah Witness was the subject of unfavorable comment by the Department of Justice in a report by the Appeal Board in connection with defendant's earlier appeal. The earlier report noted that defendant's statements, when considered against the official records of Jehovah's Witnesses, appeared so exaggerated as to reflect adversely upon his veracity. However, the current report which contains the reference to this adverse comment states that the Hearing Officer believed the defendant "to be sincere in his religious beliefs." The defendant, relying upon this statement, urges there was no basis upon which to refuse his ministerial exemption claim. The sincerity of the defendant's relig-ious beliefs, however, was not in dispute. It was accepted, and indeed was the basis of his reclassification to 1–O. What was at issue was whether he met the statutory requirement of "a regular or duly ordained minister of religion," and in deciding the question, the time spent in secular employment as against the time spent in religious activity was an important fact and related to objective matters. Accordingly, if the defendant devoted, in the furtherance of his ministerial functions, as little as thirty to thirty-five hours a month, or seven to eight hours a week, it can hardly be argued that these were other than part-time services or comprised his vocation; and even if his ministerial duties involved twenty-seven hours per week activity, again it cannot be urged that there was no basis in fact for the Board's finding that this did not satisfy the requirements of the Act so as to entitle him to exemption as a regular or duly ordained minister. Apart from the time element, the fact is that he was not a full-time minister; that as Assistant Congregation Servant his duties were "mostly record keeping"; that he was not a Pioneer (one who devotes an average of not less than 100 hours a month to preaching and teaching from house to house, and Bible studies and other related activities); and that he was not licensed to perform nor had he performed marriages.

Upon the entire record the Court is persuaded that there was a basis in fact for the Board's finding that the defendant's religious activities did not comprise his vocation on a regular basis, but that these were rendered only on a part-time basis and were in effect an avocation rather than his vocation—in short, that the defendant was not a minister as defined in section 6(g) of the Act so as to entitle him to an exemption, and accordingly the defendant is found guilty.

13. Witmer v. United States, 348 U.S. 375, 383, 75 S.Ct. 392, 99 L.Ed. 428 (1955).