**Lydle Wayne FITTS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20973.**

United States Court of Appeals Fifth Circuit.

July 10, 1964.

Victor V. Blackwell, Covington, La., for appellant.

Thomas G. Lilly, Asst. U. S. Atty., H. M. Ray, U. S. Atty., Oxford, Miss., for appellee.

Before TUTTLE, Chief Judge, and RIVES and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

 We are asked to review a conviction under the Universal Military Training and Service Act, 50 U.S.C.A. App. §§ 451–470. Lydle Wayne Fitts, one of Jehovah's Witnesses, was charged under Section 462 of the Act with failing to report to his local selection service board at Indianola, Mississippi, for assignment for civilian work as a conscientious objector.[1] He contends that as an "ordained minister of religion"[2] he was exempt from selective service. The district court, sitting without a jury, held that the defendant failed to establish his exemption as a minister of religion. We affirm.

---

1. 50 U.S.C.A. App. "§ 462. Offenses and penalties.

"(a) Any * * * person charged as herein provided with the duty of carrying out any of the provisions of this title * * * who shall knowingly fail or neglect to perform such duty * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,000, or by both such fine and imprisonment * * *."

2. 32 C.F.R. § 1622.43 Class IV-D: "Minister of religion or divinity student.

(a) In Class IV-D shall be placed any registrant:

(1) Who is a regular minister of religion;

(2) Who is a duly ordained minister of religion;

(3) Who is a student preparing for the ministry * * *; or

(4) Who is a student preparing for the ministry * * *.

(b) Section 16 of Title I of the Universal Military Training and Service Act, as amended, contains in part the following provisions:

Sec. 16. When used in this title —* * * (g) (1) the term "duly ordained minister of religion" means a person who has been ordained, in accordance with the ceremonial, ritual or discipline of a church, religious sect or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect or organization and to administer the rights and ceremonies in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

(2) The term "regular minister of religion" means one who as his customary vocation preaches or teaches the principles of religion of a church, a religious sect, or an organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect or organization as a regular minister.

(3) The term "regular or duly ordained minister of religion" does not include a person who irregularly or incidentally preaches or teaches the principles of religion of a church, religious sect or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect, or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization.

## I.

August 10, 1955, Fitts registered in accordance with the Act. His registration card shows that his occupation was farming. August 11, 1956, he became a member of Jehovah's Witnesses. Fitts promptly notified his local board of this fact, obviously because he considered that it affected his draft status, but he did not request a ministerial exemption. September 25, 1956, his board classified him as a Conscientious Objector (Class I–O) and mailed to him a notice of classification (SSS Form No. 110). He took no formal appeal. In the Special Form for Conscientious Objector which Fitts filled out August 20, 1956, he listed "farming work" as his occupation. In a questionnaire, February 6, 1961, he stated that his occupation then was "Farmer serving as an ordained minister while undergoing further training in the ministry." August 23, 1961, the board mailed him another SSS Form No. 110, again classifying him in Class I–O.

Major Shed Weeks, Occupational Advisor to the local board, visited Fitts's farm October 31, 1961, to discuss work appropriate to the defendant. Major Weeks had had other interviews with Fitts. According to Major Weeks, the defendant said that he considered farming his primary vocation. Since no understanding was reached as to the nature of the civilian work Fitts was to perform, Major Weeks advised him to appear before his local board.

November 1, 1961, the defendant appeared before his board to discuss the obligations of his I–O classification and the kind of civilian work he could perform. At this meeting Fitts affirmed as correct Major Weeks's report that he was not a full-time minister "and he was not claiming to be one".[3] According to the memorandum of Mr. Hayden Covington, attorney for Watchtower Bible and Tract Society, the governing body of Jehovah's Witnesses, the Society claims ministerial classifications only for Pioneers and Con-

---

3. The Summary of the Local Board Meeting, November 1, 1961, states:
 "The registrant appeared before the Board, and the information presented in Major Weeks' report was discussed with him, to which he fully agreed as being correct. It was explained to him by the Board that they would love to give him a ministerial classification if he qualified under the regulations, but by his own admission and his religious activities, and for lack of sufficient religious activities, he did not in any way qualify for 4-D. Therefore it would be necessary for them to proceed in processing him for civilian work in lieu of induction into the armed forces. The Board then asked Major Weeks if he would explain to him the Civilian Work Program as set up for Class I-O registrants. This Major Weeks did, and the registrant stated that he could see not that he could not accept any such work; that it was against his religious belief. He discussed the scripture in his Bible in an attempt to substantiate his belief as claimed. Then he gave the Board Members a copy of the Watchtower Bible and Tract Society literature for their personal use.
 "The Board asked him if he had any additional information that he would like to present to the Board for his file, which he said that he did not, and that he reaf-

firmed Major Weeks' report that he was not a full-time minister, and that he was not claiming to be one, and was not asking the Board to give him a ministerial classification, but would appreciate it if they saw fit to do so.
 "In the discussion of his position and activities with Jehovah Witnesses, and the Memorandum of Mr. Hayden Covington to the Director of Selective Service, Major Weeks explained to Wayne that according to Mr. Covington there were only two positions in the Society that they were claiming ministerial classifications for, and those are the Pioneer and Congregational Servant, and only then when the Congregational Servant was doing field work in addition to taking care of his ministerial duties of the congregation. Major Weeks read and showed this part to Wayne, and he said that he was not a Congregational Servant, an Assistant Congregational Servant, or a Pioneer, and he had no evidence to show any official position he held in the Society. In fact, there is not much evidence of his preaching activities in his file, and as stated above, Mr. Fitts had no additional information to offer.
 "The Board then determined in his presence not to reopen his classification, and unanimously voted to continue him in Class I-O."

gregational Servants; and only then when the Congregational Servant is doing field work in addition to taking care of his ministerial duties to the congregation. Fitts said that he was not a Congregational Servant or a Pioneer, or an assistant, and he had no evidence to show that he held any official position with the Society. Fitts told the board that he conducted Bible study classes as an Assistant Bible Study Conductor on Wednesday nights and distributed material relating to Jehovah's Witnesses, but he admitted that farming came first with him. When he was informed of the nature of the work he would be required to do as a conscientious objector, he stated that he was unwilling to perform such work because it was contrary to his religious beliefs. After a full discussion of the nature of Fitts's religious activities, the board refused to reconsider his classification. The board advised him of this decision by letter enclosing a blank SSS Form No. 152 to be returned with information on his work qualifications. By letter dated November 13, 1961, the defendant returned the form, still in blank and, for the first time, contended that his primary vocation was that of "preaching and teaching about the Kingdom of God." The board acknowledged the defendant's letter returning the blank form sent him and informed him that he could choose any one of three approved types of work. He refused to make a choice.

Fitts met with his board again April 5, 1962. Again, he reaffirmed the accuracy of Major Weeks's report to the board, but refused to make himself available for civilian work. He stated that his ministerial work totalled about forty-eight hours a month; Major Weeks had estimated ten hours a week based, in part, on Fitts's admissions. Again the board refused to reopen his classification.

April 11, 1962, the defendant's father requested a deferment for his son so that he might be available for the summer farming duties. The local board made no specific reply but in a letter dated May 31, 1962, it ordered the defendant to report for work on June 11, 1962. After he failed to appear for work, the United States brought this criminal action for violation of the Act, 50 U.S.C.A. App. § 462.

## II.

Congress exempts from training and service "[r]egular or duly ordained ministers of religion". 50 U.S. C.A. App. § 456(g). A minister is one who as his regular and customary vocation "preaches and teaches" the principles of religion, of a church, a religious sect, or organization of which he is a member.[4] The term "minister" does not include a person "who irregularly or incidentally preaches and teaches * * * or * * * who does not regularly, as a vocation, teach and preach". 50 U.S.C.A. App. § 466(g).

This Court has adopted a liberal construction of the ministerial exemption. As Judge Hutcheson has said:

"(1) the statute under construction is a statute of religious liberty; (2) the blood of the martyrs is the seed of the church; and (3) liberty and law must go hand in hand, neither must outrun the other". Olvera v. United States, 5 Cir. 1955, 223 F.2d 880, 883.

In Pate v. United States, 5 Cir. 1957, 243 F.2d 99, 103, this Court emphasized that local draft boards must not "fit the garments of orthodoxy on a pioneer minister of Jehovah's Witnesses". We held:

"Therefore, here, in addition to the non-existence in the record of evidence to rebut the defendant's prima facie case, there are the further undisputed facts that the draft boards employed standards applicable to ministers of orthodox churches instead of those standards fixed in the law and applicable here, and thus erroneously held: that part time secular work, from which defendant earned all his livelihood, defeated

---

4. See footnote 2.

the ministerial claim; and that, because he did not earn any part of his livelihood from his ministry, he could not be regarded as a minister. \* \* \* *Nowhere in [the Act or Regulations] is there a requirement that a minister earn his livelihood from the ministry or from a particular congregation, or that he have a pulpit before he can claim and receive classification as a minister.* All that the act and regulations require in order for one to qualify as a minister and to receive the classification is that the ministry be his vocation, not an incidental thing in his life."

Again, in Wiggins v. United States, 5 Cir. 1957, 261 F.2d 113, 115, this Court pointed out:

"Congregation Servants, Pioneer Ministers, Bible Study Conductors, and other members of Jehovah's Witnesses who correspond to ministers in a conventional organized religion usually do not receive a salary. They must engage in some secular work in order to earn sufficient funds to carry on their religious work. To a draft board, therefore, a Witness steadily employed and earning fifty dollars a week may seem no different from any other draftee gainfully employed—although the Witness may sincerely regard the ministry as his vocation and other Witnesses may accept him as a minister. This situation is not adequately covered in the Act and Regulations."

██ We adhere to these views, notwithstanding expressions to the contrary from some courts. See, for example, United States v. Tettenbaum, D.C.Md. 1960, 186 F.Supp. 203, 206 and United States v. Stewart, D.C.Md.1963, 213 F. Supp. 497. Nevertheless, the scope of review is narrow. The "registrant bears the burden of clearly establishing a right to the exemption" (Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132) and the Act provides that decisions of the Board are "final" (50

U.S.C.A. App. § 460(b) (3)). The critical question before the reviewing court is whether there are "insufficient facts to support [the Board's] conclusion." Estep v. United States, 1945, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. There must be "no basis in fact" for the classification before the reviewing court should intervene and set aside a decision of a local board:

"If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption." Dickinson v. United States, 1953, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132, 138.

The record in this case does not bring Fitts under the protective cover of Pate and Wiggins. In Pate the Court held:

"[T]he board's conclusion was reached without any evidence to sustain it; the board seemed to base its classification on the fact that the 1200 hours per year which registrant stated he was *obligated* to give to the ministry was all the time that he gave to it, and that this was not enough; \* \* \* Finally, it appears beyond question from the testimony of the members of the local board, that the board did not consider the defendant's status from the standpoint of the facts of his case as applied to the law and regulations but upon the erroneous conclusion emphasized and acted upon, that, since all of Jehovah's Witnesses claimed to be ministers and all could not be, the claim of the registrant in this case was, on its face, fraudulent and unsound." 243 F.2d at 102.

In Wiggins the Court held:

"[The] local board built no record \* \* \* called no witnesses and made no effort whatever to put any evidence in the record (the selective

service file) to rebut Wiggins' claim to exemption."

In these cases, therefore, "there was no basis in fact for the board's decision".

 Three basic considerations have guided the courts when reviewing the rights of Jehovah's Witnesses to ministerial exemptions. All serve to distinguish the case before us from Pate and Wiggins.

First, the registrant must have the ministry as a vocation rather than as an avocation. As Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, brings out, conscientious objection must be decided wholly on the subjective state of the registrant's mind. The problem is different in deciding the ministerial exemption, where "the issue is the nature of his activities" and an objective determination can be made. The manner, however, in which the registrant views his activities, especially as discoverable from outside facts, is of probative importance. In Wiggins the defendant was a full-time crane operator but he put his ministerial activities before his secular labors. On several occasions he changed jobs rather than have his secular work conflict with his religious work. The opposite is true with Fitts. He has always recognized the primacy of farming over his religious activities. As late as November 1, 1961, Fitts admitted that farming was his principal occupation, and there was no apparent change in his actual work pattern before or after November 13, 1961, when he first asserted the ministry to be his vocation. The defendant freely admitted to Major Weeks that he took part in his religious activities only when he had spare time; when the weather was good and there was farm work to be done, his farming took precedence over his ministerial affairs.

Second, religious affairs must occupy a substantial part of the registrant's time and they must be carried on with regularity. Pate worked a hundred hours a month. Wiggins showed that he spent about thirty-eight hours a month in his capacity as minister. The estimates of the present defendant's activities are in conflict. Fitts's local board was entitled to credit Major Weeks's estimate of ten hours. In addition, it is clear that the defendant's activities were in no sense regular or predictable; they were fitted to his farming requirements.

Finally, and most important, in order to obtain an exemption a registrant must stand in the relation of a minister to a congregation or in an equivalent relation as a recognized leader of a group of lesser members of his faith. One of the basic purposes of the exemption is to guard against a flock being left without its shepherd. Dickinson v. United States, supra. In Wiggins, the defendant was a Book Study Conductor. In addition, he regularly attended assemblies, congregations of ministers, where he had official duties, and he had preached regularly from a pulpit before a congregation at a fixed place. We held that Wiggins had made out a *prima facie* showing "that he stood in the relation of a religious leader to other members of his faith, in a capacity comparable with that of an assistant pastor." 261 F.2d at 119. In the case before us the defendant is an Assistant Book Study Conductor. The few study groups he conducts are small groups in his family setting. He made no showing that he ever conducted any teaching or preaching activities before the Hollandale congregation of which he is a member or of any congregation. His alleged ministerial activities consisted of his own studying, and his occasionally passing out pamphlets, occasionally going from house to house, and occasionally assisting in small bible study classes. "A position of leadership in the congregation assumes greater significance in determining whether exemption should be given when the time spent in ministry is undetermined, irregular or insignificant." United States v. Willard, N.D. Ohio E.D.1962, 211 F.Supp. 643, 653, aff'd, 6 Cir. 1963, 312 F.2d 605, cert. den'd, 1963, 372 U.S. 960, 83 S.Ct. 1014, 10 L.Ed.2d 13.

In sum, Fitts made no showing of a *prima facie* case putting him in the

**422**

position of a religious leader of Jehovah's Witnesses. And his local board, unlike the boards in Pate and Wiggins, built a record. The Court is sympathetic with the position of Jehovah's Witnesses: some allowance must be made for religious leaders who engage in secular work only because they are not paid for their religious ministry. But on the record in this case, it would be a disservice to the ministerial exemption to hold that there was no basis in fact for the board's decision denying Fitts an exemption as a minister.

The Court finds it unnecssary to discuss all of the contentions of the parties. The Court has, however, considered these contentions.

The judgment is affirmed.