Paul John MATYASTIK, Appellant,

v.

UNITED STATES of America, Appellee.

No. 24269.

United States Court of Appeals Fifth Circuit.

Feb. 12, 1968.

Rehearing Denied March 12, 1968.

Parks W. Bell, Dallas, Tex., for appellant.

Reese L. Harrison, Jr., Asst. U. S. Atty., Ernest Morgan, U. S. Atty. Western District of Texas, San Antonio, Tex., for appellee.

Before TUTTLE, GEWIN and GODBOLD, Circuit Judges.

GEWIN, Circuit Judge.

Paul John Matyastik (appellant) was tried in the United States District Court for the Western District of Texas, Austin Division, for the offense of failing and refusing to perform civilian work in violation of the Universal Military Training and Service Act.[1] After waiving trial by jury and entering a plea of not guilty, appellant was convicted and sentenced to a term of four years. From the judgment and sentence this appeal was prosecuted. We affirm.

Upon attaining the age of eighteen, appellant registered with Texas Local Board # 92 of the Selective Service System located in Cameron, Texas. Approximately six months later, on December 14, 1961, he received his initial questionnaire from the board which he promptly filled out and returned. In this questionnaire appellant claimed that he was an ordained minister of religion and had held such status since March 12, 1960. The local board then sent to the appellant the special form for conscientious objectors and this form was completed and returned in due time. On January 14, 1962, the appellant was classified 1–A–O, and notice of this classification was mailed to him two days later. Appellant subsequently requested and was granted a personal appearance before the board. He appeared on February 18, 1962, and was again classified 1–A–O. An administrative appeal was taken from this decision, and on March 26, 1963, ap-

---

1. UMTSA, Title 50 U.S.App. §§ 456(j) and 462(a).

pellant was notified that he had been classified 1–O (conscientious objector) by the appeals board. At a meeting between appellant and a representative of the State Selective Service System held to discuss civilian employment for him, in lieu of actual military service, appellant refused to agree to work for the government or to make a choice of work to be performed. It was his contention that such work woud be in direct conflict with his religious activities and beliefs. Appellant was ordered to report for work at the Austin State Hospital in Austin, Texas, which he failed to do.

The appellant does not contend that he was not given ample opportunity to present his claim to the board; that he was not accorded proper hearings or notice; that there was any lack of basic fairness in the procedure followed by the board; or that he was not accorded constitutional due process. In one letter he expressed his appreciation of the attention and consideration given to him. He simply disagrees with the classification given to him, contends that he is entitled to a ministerial exemption, and that there is no basis in fact for his classification.

■ The scope of review in selective service cases is "the narrowest known to the law". Blalock v. United States, 247 F.2d 615 (4 Cir. 1957). Congress provided that decisions of local draft boards

"shall be final." [2] The Supreme Court clarified the meaning of "final" in the case of Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed.2d 567 (1946) wherein it stated that:

"The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." [3]

The burden is on the registrant to make out a prima facie case for exemption before the local board.[4] Once he has done so the local board is not simply free to disbelieve him, but there must be affirmative evidence in the files of the board to refute the claim. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L. Ed. 132 (1953); Wiggins v. United States, 261 F.2d 113 (5 Cir. 1958).

■ Our inquiry is, therefore, did the local board have any basis in fact for denying the ministerial exemption claimed by appellant? A careful review of the record convinces us that it did.

Appellant's selective service file, which was placed in evidence, contains the evidence which appellant claims entitles him to a IV–D classification. Briefly summarized, the file included seven certificates by various persons attesting to the fact that appellant was a duly ordained minister, a document from the Watch-

2. Title 50, U.S.C.App. § 460(b) (3) at the time of the indictment read:
"The decisions of such local board shall be final, except where an appeal is authorized * * *. The decision of [the] appeal boards shall be final in cases before them on appeal unless modified or changed by the President."

3. Title 50, U.S.C.App. § 460(b) (3) was amended in 1967 and now reads:
"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution * * * after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in

war in any form: *Provided*, That such review shall go to the question of the jurisdiction * * * only when there is no basis in fact for the classification assigned to such registrant."
In effect Congress has merely codified the case law with respect to the extent of review allowable in selective service cases.

4. The heavy burden imposed by the narrow scope of review is evidenced by the recent decisions of this court denying relief. Jones v. United States, 387 F.2d 909 (5 Cir. 1968) (January 17, 1968); Foster v. United States, 384 F.2d 372 (5 Cir. 1967); Greer v. United States, 378 F.2d 931 (5 Cir. 1967); Wood v. United States, 373 F.2d 894 (5 Cir. 1967); Fitts v. United States, 334 F.2d 416 (5 Cir. 1964).

tower Bible and Tract Society showing appellant's appointment as Literature Servant in the Cameron, Texas, Unit, and various statements by appellant concerning his religious activities. These activities included attending workshop and study meetings, lectures and assemblies; conducting house to house study meetings; and on occasion delivering oral sermons. Appellant's file also reveals that he subsequently moved to Houston, Texas, and acquired full-time employment, which he admitted at the trial occupied 44 hours a week. The Board file clearly shows that appellant moved from Cameron to Houston some months prior to the time he was ordered to report for work, but it does not show any activities as a minister while in Houston. What may have been the change in his status with respect to the Cameron congregation after he moved to Houston is not reflected in his file. The file does reflect that he was engaged in secular work in Houston.[5] At the trial the appellant testified that he spent 75 to 80 hours monthly on his religious duties, but the board files contain no such information. The government contends that his file reveals much less time spent in religious activities, even when he lived in Cameron. He further testified at the trial that while in Houston he served as Assistant Magazine Territory Servant and Assistant Book Study Conductor.

In applying the applicable law to the facts presented in this case, it is clear that appellant's religious duties fall short of both the statutory and case law requirements for a ministerial exemption.

The statutory definition of the term "minister" for purposes of exemption are contained in Title 50, U.S.C.App. § 466(g). Under this definition in order to qualify for a ministerial exemption the ministry must be one's customary vocation and does not include a person who only incidentally or irregularly preaches and teaches his religion.[6]

---

5. While in Houston appellant wrote his draft board as follows:

> "January 20, 1965
> 1722 Colquitt Apt. 7
> Houston, Texas
>
> Texas Local Board No. 92
> Citizens National Bank Bldg.
> Cameron, Texas
> Gentlemen:
>
> Due to arising circumstances I would like to ask that you would postpone my interview which was to be Monday, January 25 at 2 P.M. to a later date.
> It will be impossible for me to make this interview because of a death that has taken place in the company were [sic] I work. Also several employees are on vacation at this time and under these circumstances my employer feels that it is impossible for me to leave.
> Your kind consideration in this matter will be appreciated.
>
> I respectfully remain,
> Paul John Matyastik"

6. Title 50, U.S.C.App. § 466(g) reads as follows:

> "(g) (1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community

of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

> "(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

> "(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vo-

The case law requirements for a ministerial exemption are well summarized in Fitts v. United States, 334 F.2d 416 (5 Cir. 1964) which states that the basic considerations for the courts when reviewing the rights of Jehovah's Witnesses to ministerial exemptions are: (1) the registrant must have the ministry as a vocation rather than an avocation; (2) religious affairs must occupy a substantial part of the registrant's time and they must be carried on with regularity; and (3) the registrant must stand in the relation of a minister to a congregation or in an equivalent relation of a recognized leader of a group of lesser members of his faith. In the instant case the appellant's religious activities do not meet these requirements.

Appellant would have us draw a parallel between his case and that of Wiggins v. United States, 261 F.2d 113 (5 Cir. 1958). In that case this court made it clear that the ministerial exemption is only to be granted to one who "as a vocation, regularly, not occasionally, * * teaches and preaches the principles of his religion." The Wiggins case is distinguishable from the instant case. One basis of the reversal of Wiggin's conviction was that the local board's criterion in denying a IV–D classification to Wiggins was that he was not paid for his ministerial work. 261 F.2d 113 at 117. Clearly, this was an improper test. In addition, Wiggins "preached regularly from a pulpit before a congregation at a fixed place." 261 F.2d 113 at 119. In short, the totality of the facts in that case allowed the court to conclude that Wiggins was entitled to a IV–D classification. The facts presented by appellant in this case do not allow us to reach a similar conclusion.

■ The Wiggins case was distinguished by the Fourth Circuit in a manner similar to our own. United States v. Stewart, 322 F.2d 592 (4 Cir. 1963).[7] The rule in that circuit is that the mere fact of secular employment does not permit a local board to deny an exemption automatically, but at some point on the scale the relative amount and type of secular activity may permit such a decision. United States v. Jackson, 369 F. 2d 936 (4 Cir. 1966); United States v. Stewart, supra. The rule in this circuit is very similar. As stated in Wiggins v. United States, supra:

"[T]he time spent in secular employployment as against the time spent regularly in religious activities is an important factor in deciding whether a man is entitled to an exemption as a minister."

Clearly one may engage in secular employment without foregoing his ministerial exemption, perhaps even up to 40 hours or more per week under facts identical to Wiggins, but the amount of time spent on each is very relevant on the issue of whether one does follow the ministry as a vocation.[8]

cation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

7. "In Wiggins v. United States, 261 F.2d 113 (5 Cir. 1958), cert. denied, 359 U.S. 942, 79 S.Ct. 723, 3 L.Ed.2d 676 (1959), the court pointed out that the amount of time spent in religious activity was not conclusive. There the court found that the undisputed evidence would support the conclusion that Wiggins had shown 'that he stood in the relation of a religious leader to other members of his faith, in a capacity comparable to that of an assistant pastor.' Here the record discloses an evidential basis for a contrary view although conceivably this board could also have found Stewart to be a minister within the meaning of the Act. There the board was clearly under the erroneous impression that to qualify as a minister under the Act one must be paid for his ministry." United States v. Stewart, 322 F.2d 592 (4 Cir. 1963) at 595.

8. Some of the other cases where the time spent in secular employment was essentially equivalent or less than the 44 hours per week worked by appellant in this case are as follows: Jones v. United States, 387 F.2d 909 (5 Cir. 1968)—40 hours; United States v. Jackson, 369 F.2d 936 (4 Cir. 1966)—40 to 45 hours; United States v. Kushmer, 365 F.2d 153 (7 Cir. 1966), cert. den. 387 U.S. 914,

We conclude that appellant failed to make a prima facie case for a ministerial exemption before the local board; and even if it could be argued that he did, there was also sufficient affirmative evidence in his file which tended to refute his claim to the exemption. It can not be said that there is no basis in fact for the classification he was finally given. Finding no merit in appellant's contentions, the judgment of conviction is affirmed.

TUTTLE, Circuit Judge (concurring specially):

In view of the scantiness of the record of Matyastik's alleged ministerial activities after moving to Houston, I am forced to concur in the judgment of the court. However, in doing so, I think it important to make the following comment with respect to the relative amount of time spent in secular activity and in ministerial duties, in cases where a prima facie case is made on behalf of the applicant for ministerial classification. It being understood that ministers of the Jehovah's Witnesses denomination are not paid for their ministerial work, it necessarily devolves upon them to be gainfully employed for their support and the support of their family. To me, therefore, it is utterly inconsistent to say that the amount of time an applicant for such status devotes to making a living for himself and family is to be weighed in determining whether he is a minister by vocation. The record here is replete with statements by this appellant that he places his duty and obligation to perform the services for his religious organization above all other callings. The failure here is due to his inability to document activities as a minister demonstrating that he had actually performed the services of the kind delineated in the statute.

87 S.Ct. 1698, 18 L.Ed.2d 637—30 hours; Smith v. United States, 238 F.2d 79 (5 Cir. 1956)—45 to 50 hours; Leitner v. United States, 222 F.2d 363 (4 Cir. 1955)—45 hours; Davis v. United States, 203 F.2d 853 (8 Cir. 1953), cert. den. 345 U.S. 996, 73 S.Ct. 1138, 97 L.Ed.

1403—40 hours; United States v. Bartell, 144 F.Supp. 793 (S.D.N.Y.1956)—40 to 45 hours; United States v. Kinney, 125 F.Supp. 322 (E.D.Ill.1954)—45 hours; United States v. Schuemann, 119 F.Supp. 640 (Neb.1954)—40 hours.