**Application of Fanny DRAGO, on behalf of Mario Anthony Drago, Jr., a minor, Petitioner,**

**v.**

**Gines PEREZ, as Commanding General of Fort Jackson, South Carolina, Respondent.**

Civ. A. No. 68–229.

United States District Court
D. South Carolina,
Columbia Division.

April 3, 1968.

Augustus T. Graydon, of Graydon & Davis, Columbia, S. C., and Richard L. Spero, Mineola, N. Y., for petitioner.

Klyde Robinson, U. S. Atty., for District of South Carolina, Columbia, S. C., and Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., for respondent.

## ORDER

HEMPHILL, District Judge.

Fanny Drago seeks discharge or release of her son, E-1 Mario A. Drago, from the United States Army, because of his alleged physical unfitness. She petitions for the Great Writ as the vehicle of accomplishment, not only stating that he is unfit for military service, but claims also "that the rigors of military service might permanently impair his health, might, in fact, endanger his life." Annexed to and as a part of her Petition were affidavits of Doctors Blaso and Randel, named as knowledgeable on the critical medical facts.

This court honored the Petition by issuing, on March 15, 1968, a rule to Respondent to show cause why the soldier should not be discharged on medical grounds. The Order provided that the soldier be produced before the court.

Respondent filed his Return on March 25, 1968, admitting the current station and training of the soldier, denying the allegations of unfitness, and alleging that required physical examinations had been given the soldier. Additional allegations recite the appointment of a medical board, in compliance with Army regulations, to make a determination as to the medical fitness of the soldier, and attached the report as a part of the return. In addition Respondent attached to the Return copies of records and examinations of the soldier allegedly pertinent to the issues joined by Respondent's denial that Petitioner was entitled to relief or that the soldier was entitled to discharge.

A hearing was held March 26, 1968 at which all parties were represented by able counsel and the soldier was present. A determination was made, without objection, that prerequisite administrative procedures had been pursued and a decision thereon rendered. The representation of the Mother on behalf of her son was not questioned. Petitioner did not offer the soldier as a witness and no effort was made by Respondent to call and examine Mario Anthony Drago, Jr., as an adverse party under Rule 43. The matter was submitted on the record.

The affidavit of Dr. William J. Blaso of Jackson Heights, New York, recites the family physician relationship and gives a diagnosis of rheumatic heart disease commencing in 1962; he states his patient suffers a systolic murmur at the cardiac apex indicating a metral stenosis and insufficiency. Dr. Blaso referred the patient to heart specialist Wilmer H. Randel, Jr., M. D., of Long Island City, New York. His affidavit declared the soldier afflicted with rheumatic heart disease in active metral deficiency, with resulting military unfitness.

The Army's chronological record of medical care reveals:

On November 6, 1967, an electrocardiographic report diagnoses a "verticle heart".

On February 8, 1968, various cardiographs were reported.

On February 9, 1968, a radiograph report was negative.

On February 9, 1968, a consultation report notes no evidence of organic heart disease but severe cardiac neurosis. Cardiogram "chits" (sample graphs) are included.

A February 15, 1968, examination reported the soldier's stated history of dizziness over a period of 7–8 years. The examining physician noted mild

palpitation over pulse area accentuated by inspiration.

A February 26th examination reported "no organic heart disease is present."

On March 25, 1968, Medical Board action diagnosed the soldier:

(1) 7934: Medical observation for organic heart disease, no disease found.

(2) 3800: Astigmatism, hyeropic, with estropia.

The findings of Captain William R. Gaston, M.C., U. S. Army, stated, "This man is medically fit for duty * * * without profile or duty limitation."

Major Thomas I. Caras, M.C., U. S. Army, found the soldier fit for duty, no evidence of rheumatic heart disease, and "Although there is a prominent murmur, this is felt to be functional and of no hemodynamic significance."

The Chief of the Medical Corps requested another cardiologist's opinion and C. Warren Irvin, Jr., M.D., a recognized heart specialist of the Columbia, South Carolina, area, was called in. He reported:

Severe iatrogenic heart dysfunction. There is no real evidence of any organic heart disease. This murmur is louder than many functional murmurs and it is easy for me to see how it could have been misinterpreted. I do not really believe there is any evidence of rheumatic heart disease in this boy.

Title 32, Chapter 16, Code of Federal Regulations, deals with Selective Service Procedure generally. Specifically, 32 CFR 1628.10 provides:

Every registrant, before he is ordered to report for induction, or ordered to perform civilian work contributing to the maintenance of the national health, safety, or interest, shall be given an armed forces physical examination under the provisions of this part, except that a registrant who is delinquent and a registrant who has volunteered for induction may be ordered to report for induction without being given an armed forces physical examination.

32 CFR 1631.7 provides:

Each local board, upon receiving a Notice of Call on Local Board (SSS Form No. 201) from the State Director of Selective Service (1) for a specified number of men to be delivered for induction or (2) for a specified number of men in a medical, dental, or allied specialist category to be delivered for induction, shall select and order to report for induction the number of men required to fill the call from among its registrants who have been classified in Class I-A and Class I-A-O and have been found acceptable for service in the Armed Forces. * *

The record here reveals that, on request from authorities at Fort Hamilton, New York, the Internal Medicine Clinic, USN Hospital, St. Albans, N. Y., examined the inductee as provided by regulation, and reported, among other things:

Physical examination: Anxious, muscular male in no distress. Pulse 110 per minute. Blood pressure 135/80. Head, eyes, ears, nose and throat—negative. Neck—good pulses. Lungs clear. Heart—normal sinus rhythm; no increase in size; first sound slightly prominent, but not outside normal limits for hyperkinetic heart. Second sound is normal with normal split; second (pulmonic) component not exaggerated. A Grade II–III harsh short systolic murmur is heard loudest at the left sternal border in the 4th intercostal space with some radiation to base and apex, but not to axilla or neck. Diastolic completely quiet, no murmur; third sound or snap heard, despite postural changes and exercise. Abdomen—liver OK. Extremities—no edema. Electrocardiogram normal. Cardiac series—normal.

Impression: Hyperkinetic heart; no evidence of organic heart or valvular disease.

\* \* \* \* \* \*

Examination confirms the presence of a Grade I systolic murmur heard best in recumbency. There are no other positive findings clinically.

\* \* \* \* \* \*

Examination reveals a Caucasian male, 19 years of age, 68½″ tall and weighing 145 pounds. Pulse is 85 per minute and regular. Blood pressure 124/80. He is well oriented, tense and apparently in no acute distress. Examination of the heart reveals clearly audible heart sounds appearing to be rapid while standing but returning to normal in recumbent position. There is a short systolic murmur, Grade I, heard while the heart is rapid but this fades out when the heart rate returns to normal. The rhythm is regular sinus rhythm. The EKG pattern is within normal limits.

IMPRESSION: No organic disease of the heart. Murmur is innocent. Recommend orthopedic consult for right thigh.

Having determined the soldier was given proper induction examination and care the court surveys the issues of his present fitness or unfitness. The court is not faced with a review of the Selective Service procedures, nor the question of his failure to protest his classification.[1] The issue is simple: Is the soldier unfit for duty because of medico-physical impairments?

 The burden is on petitioner to establish the unfitness she claims. Her (his) path is similar to that of a registrant attempting to convince a draft board of his ministerial status. United States v. Stewart, 322 F.2d 592 (4th Cir. 1963). He must first prove that the facts on which he bases his claim are accurate. He must next convince that the objective facts fall within the realm of possible reliable medical diagnosis. Finally, he must prove that the medical facts show him physically or mentally unfit for duty. His claim can-

not be dismissed solely on the basis of suspicion and speculation. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

Petitioner has totally failed to convince the court of the justice of her Petition. As sympathetic as one may be to a soldier who has been taught to believe he had dangerous heart trouble, the injustice of compounding that mistake with a decision making him a cripple of record is apparent. His counsel stated candidly they could not question the soundness or accuracy of Dr. Irvin's findings. The court concurs.

The Petition is dismissed. The record reveals a soldier fit to be returned to full duty.

And it is so ordered.

---

1. The record is silent as to his differences, if any, with his local board, or a subsequent review authority, as to his classification.