**HARRIS v. ROSS.**

No. 11173.

Circuit Court of Appeals, Fifth Circuit.

Nov. 7, 1944.

Ralph C. Brown, of Atlanta, Ga., for appellant.

Major Reid B. Barnes, J. A. G. D. Army of United States, Major Myron T. Nailling, J. A. G. D. Army of United States, and Harvey H. Tisinger, Asst. U. S. Atty., all of Atlanta, Ga., for appellee.

Before HUTCHESON, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The facts are accurately stated by the Court below.[1]

▉ Under the Selective Training and Service Act every able-bodied male citizen between the ages of eighteen and forty-five is liable for training and service in the military forces of the United States unless he is otherwise excepted by the Act. Only those are exempt by the Act who are

---

[1] "Petitioner after induction into the Army, seeks to be released therefrom by the writ of habeas corpus, predicated upon his contention that the action of his Local Draft Board classifying him 1-A was arbitrary and that the classification is not supported by the evidence, and that the Board has been unfair and abused its discretion by a finding contrary to the facts. He contends that, as a duly ordained minister of religion in the terms of the Selective Training and Service Act of 1940 and regulations thereunder, he should be classified in class 4-D.

"Return was made by the Commanding Officer of Ft. McPherson, Georgia, where the petitioner is serving as a member of the Army, and the petitioner produced in open Court.

"Upon the hearing petitioner's counsel chose to confine his claim to relief to the single ground that as the petitioner was a Counsellor in the independent branch of the Church of Christ of the Latter Day Saints at Waycross, Georgia, and had been duly ordained as such, he was ipso facto entitled to classification in class 4-D and that therefore any other classification was of necessity arbitrary as a matter of law. Petitioner presented as a witness the President of the Southern States Mission of the Church of Jesus Christ of the Latter Day Saints who testified that there was an independent branch of the Church at Waycross and that the petitioner was a Counsellor to the President of the branch and had served in that capacity during the year that the witness had presided over the Mission and that 'as far as I know he has been performing his duties * * * as a Minister.' Upon cross examination the witness testified to the effect that he had no personal knowledge of any services which had been performed by the petitioner but that he had heard no complaints, but he didn't know of any meetings that he has presided over. Over the objection of the petitioner's counsel the Court permitted examination of the witness as to the organization of his Church, and from this it appears that the Waycross Church was organized in accordance with the discipline of the Church and with the petitioner as one of the Counsellors. To the question 'And you don't know, to your own knowledge, whether this man ever functioned or exercised his jurisdictional feature of Counsellor over the Church. To your own knowledge, you don't know whether he has done it one time.' The answer was: 'No,

only that it has been reported that he is doing his duty.' The witness further testified that in his Church there were no paid ministers and that each President and Counsellor was customarily engaged in some other gainful occupation as a means of livelihood. The petitioner did not testify as a witness and there was no further testimony in his behalf.

"The respondent tendered in evidence the Selective Service file of the petitioner from which it appeared that in his questionnaire petitioner stated that his occupation was that of a clerk in a retail liquor store and that he had been engaged in that kind of work for three and one-half years. Under the statement of 'Series VIII * * * Minister or Student Preparing for the Ministry,' he answered, 'I am a Priest of religion. I do customarily serve as a Priest. I have been a Priest of the Church of Jesus Christ of Latter Day Saints since February 19, 1941. I have been formally ordained as a Priest at Waycross, Georgia. If so, my ordination was performed on February 19, 1941.' This questionnaire was dated and sworn to on the 13th day of May, 1941. In his occupational questionnaire filed October 27, 1942, petitioner stated the title of his present job as 'clerk in a liquor store.' On May 24, 1941, the Local Board classified the registrant in Class 3-A and no appeal was taken therefrom. On May 3, 1944, petitioner was reclassified by his Local Board and placed in Class 1-A, the minutes reciting 'considered for 4-D but rejected account registrant operates liquor store six days week.' The file likewise discloses that on May 17, 1944, petitioner was 'denied deferment,' and on May 18, 1944, petitioner appealed his classification to the Board of Appeal which board on June 11, 1944 continued the classification of 1-A made by the Local Board. It is alleged in the return, and not contradicted, that following the request for a personal appearance, the petitioner appeared before the Local Board in person and 'said Board reviewed and reconsidered his case and on May 17th, 1944 continued his classification in 1-A; that at the time of his said reclassification there was no evidence before said Local Board that his status in so far as his right to claim exemption under section 305 (d) of the Selective Training and Service act of 1940 as amended, or the regulations thereunder, had changed since the first classification in 3-A." D.C., 58 F.Supp. 299.

"regular or duly ordained ministers of religion, and students who are preparing for the ministry in theological or divinity schools recognized as such for more than one year prior to the date of enactment of this Act." Paragraph (d), Sec. 305, Title 50 U.S.C.A.Appendix. No others are ever exempt, but they may only be deferred, for appropriate reasons, during such period only as the causes of their deferments shall continue. Since it is definitely the obligation of every such citizen to serve, the burden of proving that a registrant is liable to service is not on the government nor on the local board. One within such age limits who seeks to be classified within the only exemption contained in the Act (Lehr v. United States, 5 Cir., 139 F.2d 919) has the definite and positive burden of proving that he is a regular or duly ordained minister of religion or student preparing for the ministry as defined in paragraph (d), Sec. 305, Title 50 U.S.C.A.Appendix. In short, it is the burden of every male citizen within such age group who would escape the performance of military duty to definitely satisfy the local board as to the existence of grounds for his exemption or the existence of appropriate and recognized reasons for his deferment. The local board does not have the affirmative.

Nor is the jurisdiction to determine who is exempt, or who shall be deferred, or inducted, a function committed to the courts, but to the local board and boards of appeal of the civilian agency of Selective Service.[2]

One who, in actuality, is a regular minister of religion is exempt under the act from military service, but the actuality and the regularity of his functioning as a minister is a question of fact, the burden of proving which is on the registrant, and the duty of passing on which is, with finality,[3] vested in the local board, subject to rights of appeal. Congress exempted from liability to military service one who is a regular minister of religion, but the Act vested the local board with the duty and discretion to determine whether as a matter of fact a registrant is a regular minister. Immunity from the general obligation of service will

[2] Sec. 310 (a) (2), Title 50 U.S.C.A.Appendix, provides that:
"Such local boards, * * * shall have power within their respective jurisdictions to hear and determine, subject to the right of appeal * * *, all questions or claims with respect to inclusion for, or exemption or deferment from, training and service under this Act of all individuals within the jurisdiction of such local boards. The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe."

[3] In Lehr v. United States, supra, 139 F.2d text 923, we said:
"The Congress has the power by statute to restrict the settlement of controversies to agencies of the Government other than the federal courts. See Switchmen's Union of North America v. National Mediation Board, [320 U.S. 297]; 64 S.Ct. 95. General Committee of Adjustment of Brotherhood of Locomotive Engineers for M.-K.-T. R. R. v. Missouri-K.-T. R. Co., 320 U.S. 323, [328], 64 S.Ct. 146, decided Nov. 22, 1943; Butte, Anaconda & P. R. v. United States, 290 U.S. 127, 54 S.Ct. 108, 78 L.Ed. 222.
"In the matter of the deferment of registrants, Congress has wisely provided that the decision of the Local Board, with the right of appeal, should be final. This, standing alone, deprives the federal court of jurisdiction to review the action of the Local Board except in cases where a Local Board was alleged to have acted without the scope of its grant of power."

In Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 349, in dealing with the question of whether or not Congress had authorized the Courts to review the propriety of a local board's classification in a criminal prosecution for wilful violation of an order to a registrant, the Supreme Court said: "The Act nowhere explicitly provides for such review and we have found nothing in its legislative history which indicates an intention to afford it. The circumstances under which the Act was adopted lend no support to a view which would allow litigious interruption of the process of selection which Congress created. To meet the need which it felt for mobilizing national manpower in the shortest practicable period, Congress established a machinery which it deemed efficient for inducting great numbers of men into the armed forces. Careful provision was made for fair administration of the Act's policies within the framework of the selective service process. But Congress apparently regarded 'a prompt and unhesitating obedience to orders' issued in that process 'indispensable to the complete attainment of the object' of national defense. Martin v. Mott, 12 Wheat. 19, 30, 25 U.S. 19, 30, 6 L.Ed. 537. Surely if Congress had intended to authorize interference with that process by intermediate challenges of orders to report, it would have said so."

never be presumed. The burden of proof is on him who seeks to bring himself within the exemption and outside the scope of the universality of the duty to serve in the armed forces.

The local board in the present case did not have the power to induct, against his will, a regular minister of religion in the face of the express exemption by Congress, but the local board did have the power and the obligation to determine whether or not the petitioner here was, in fact, a regular minister of religion. In the discharge of this function "The Local Board is not a court that must swear witnesses, allow representation by counsel, and act only on the evidence presented. It may act on matters within the knowledge of the Board whether in evidence or not. It is faced with the duty of furnishing men for the defense of the nation from those whom Congress has declared are liable to military duty, and it cannot suspend and have a formal trial, under the established rules of evidence, for every unwilling registrant who asserts his objection to the performance of that duty." Lehr v. United States, supra [139 F.2d 922].

The record in the present case does not reveal a registrant who is admittedly a regular minister of religion, such as the board would be without power to induct into the armed forces, but the petitioner is one who claims to be a regular minister, the truth of which claim the local board had the power and duty to determine from the evidence in the record, from the proofs produced, and from the extrinsic facts within the knowledge of the board, whether in evidence or not. In the absence of such facts as were within the knowledge of the board, but which are not in the record here, this Court would be in no position to review the decision of the board on the facts even if the Court had the right to review actions which are committed to the discretion of the board.

Here the respondent failed to carry the burden of proof to support his claim before the local board in a proceeding where the board was clearly acting within the scope of its duty and power. In the light of the finality given by Congress to the acts of the local boards in the matter of the classification, deferment, or exemption of registrants, the Courts cannot review acts of such boards unless they have acted beyond the scope of their jurisdiction and power, or in such a fraudulent or capricious manner as to render their acts a nullity.

The judgment of the lower Court in discharging the writ and remanding the petitioner to the military custody of his commanding officer is affirmed.