Kenneth **WOOD**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 23366.

United States Court of Appeals Fifth Circuit.

March 3, 1967.

**896**

Clay C. Long, Atlanta, Ga., for appellant.

Kenneth Wood, pro se.

F. D. Hand, Jr., Asst. U. S. Atty., Charles L. Goodson, U. S. Atty., for appellee.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This appeal presents the underlying question whether Wood, a Jehovah's Witness, is entitled as a matter of law to an exemption from selective service on the ground that he is a minister. The local board denied the exemption and classified Wood as a conscientious objector. Wood subsequently refused to report for civilian employment and was convicted of violating the Universal Military Training and Service Act, 50 U.S.C.A.App. § 462. This appeal followed.

Wood registered with Georgia Local Board 119 on August 18, 1958. In his classification questionnaire, Wood claimed the status of a minister of religion, indicating only that he had regularly served in that capacity since his ordination on November 5, 1955, at which date he was about 15 years old. He did not, however, make any claim to the status of conscientious objector. The Board classified Wood 1–A. After a lapse of more than four years, Wood was ordered to report for induction on September 25, 1963. On September 16 Wood inquired at the Board office regarding his classification and was given a conscientious objector form and instructed to return with the completed form for a personal interview before the Board at 5:30 p.m. that day. Wood completed the form, attaching thereto a statement that he was a "minister of Jehovah's Witnesses." [1] At the interview the Board dismissed [2] Wood's claim to the ministerial classification and forwarded his file to the State headquarters of the Selective Service System in Atlanta, Georgia. On the state headquarters recommendation, Wood's classi-

---

1. "To whom it may concern,
   "This is to certify that I, Kenneth Wood, am a minister of Jehovah's Witnesses and have been associated with them as such for the past eleven years. The undersigned herein will testify to this fact since I have been closly associated with them for a number of years and they so designate by their signatures on this day of September the sixteenth 1963."
   The statement was signed by five persons.

2. The following colloquy took place between a Board member and Woods:
   "[1] Q. I do not understand why you waited until you were ordered for induction to file this claim.

"A. When I first filed my first questionnaire I claimed exemption as a minister, however, I understand you do not consider this full time work. J. W. claim exemption because we do not receive pay for our work and have to do secular work in order to meet living expenses.
   "[2] Q. According to our rules and regulation you do not qualify for a ministerial classification. Since you have already been ordered for induction we will have to send this on to State Headquarters.

"A. They suggest that we go ahead through everything except induction."

fication was reopened,[3] and he was reclassified by the local Board as a conscientious objector (1-O). This action was approved unanimously by the Appeal Board. Subsequently Wood was assigned a position of civilian employment but he failed to report for duty. He was indicted and convicted by the District Court without a jury and sentenced to 18 months' imprisonment for failure to perform duties required under the Universal Military Training and Service Act, 50 U.S.C.A.App. § 462(a). We affirm.

■ The Act exempts from training and service "regular[ly] or duly ordained ministers of religion."[4] Under the statutory definitions,[5] a minister is one who, ordained in accordance with the formalities required by his religious denomination, preaches and teaches its religious tenets as his regular and customary vocation, and not merely irregularly or incidentally. Most important, the registrant bears the burden of clearly establishing a right to the exemption.[6] Dickinson v. United States, 1953, 346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132, 137; Harris v. Ross, 5 Cir., 1944, 146 F.2d 355, 357; Lemien v. United States,

5 Cir., 1946, 158 F.2d 550, 551; Prieto v. United States, 5 Cir., 1961, 289 F.2d 12, 14. The Board has no affirmative duty to ascertain whether or not the registrant qualifies for the exemption. Harris v. Ross, supra.

■■ Once the Board has classified the registrant, review by the Courts is ordinarily limited to determining whether there is any basis in fact for the classification given. Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567, 573; Dickinson v. United States, 1953, 346 U.S. 389, 394, 74 S.Ct. 152, 156, 98 L.Ed. 132, 137; Witmer v. United States, 1955, 348 U.S. 375, 381, 75 S.Ct. 392, 395, 99 L.Ed. 428, 433. Where the local Board has denied the claimed exemption, this Court has construed these cases to require that there be "some proof that is incompatible with the registrants proof of exemption." Wiggins v. United States, 5 Cir., 1958, 261 F.2d 113, 114. This presupposes, however, that the registrant has made at least some proof of exemption—that he has tendered evidence to the Board which prima facie entitles him to the claimed exemption—a supposition

3. There is no indication in the record of either the District Court or the Board that any further hearing or interview was had, or that Wood presented any further evidence, or sought permission to do so.

4. "(g) Regular or duly ordained ministers of religion, as defined in this title * * * shall be exempt from training and service (but not from registration) under this title." 50 U.S.C.A.App. § 456(g).

5. 50 U.S.C.A.App. § 466(g) (1), (3):
   "(g) (1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in

the creed or principles of such church, sect, or organization.
   " * * *
   "(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

6. "Each registrant will be considered as available for military service until his eligibility for deferment or exemption from military service is clearly established to the satisfaction of the local Board. The local Board will receive and consider all information, pertinent to the classification of a registrant, presented to it." 32 C.F.R. § 1622.1(c).

which on the record before this Court is insupportable.

■■ In this case Wood failed to take any action whatever on his 1-A classification until after he had received notice of induction. He was then afforded a hearing before the local Board for the purpose of presenting evidence that the classification was erroneous. The only evidence before the Board at that time was the original classification questionnaire in which Wood merely indicated his claim to the ministerial exemption, and the conscientious objector form, again stating that he was a "minister of Jehovah's witnesses" signed by five persons (note 1, supra).[7] The registrant failed, however, to offer the testimony of these persons, or for that matter of himself, or factual statements from either of them, in support of the claimed exemption before the Board. That Wood may have misconceived the Board requirements for ministerial qualification (see [1] A. and [2] Q., note 2, supra) can neither excuse his failure to present relevant evidence before the Board nor cast an affirmative burden on the Board to determine whether such evidence exists. Based upon the evidence before the Board at the date of the interview, and again at the date they reopened Wood's case and reclassified him as a conscientious objector, such classification was the most favorable one possible and is clearly supported by the record.

Wood's reliance on Wiggins v. United States, 5 Cir., 1958, 261 F.2d 113, is un-availing. There the Court noted that "[f]rom the very first, [Wiggins] has presented numerous affidavits, certificates, and letters, from his parents, from other member of Jehovah's Witnesses, and from non-members." 261 F.2d at 117. Such evidence, all presented to the Board, on its face established Wiggins' qualification for the exemption. In the face of such evidence, and without any rebutting evidence in the Board's record, the Board's denial of the claimed exemption was without "basis in fact". This is not the case here.

■■ But our holding does not rest on a procedural failure of this non-lawyer trained registrant to supply "facts" to the Board in a receivable form. The testimony offered before the District Court, which the Judge allowed with the widest latitude, fails to establish that had the Board had such evidence before it a decision denying a ministerial exemption would have been without basis in fact. Of course, the District Court did not, nor do we, purport to sit as "super draft boards, substituting [our] judgments on the weight of the evidence for those of the designated agencies." Witmer v. United States, supra. But analysis of the testimony in the District Court strengthens our conclusion that the classification granted by the Board was acceptable, and that Wood did not show he was entitled as a matter of law to the ministerial exemption. And this is so whether based on the standards apparently followed by the Board[8] or the less

7. "Q. Mr. Wood, back in 1963 at the time you had a hearing before the local board concerning your classification, at the time you filled out the questionnaire, they considered you a conscientious objector and classified you 1-O, didn't they?

"A. They did; yes, sir.

"Q. And what did you present then in the form of showing that you did more than just a regular Jehovah's Witness ministry.

"A. I presented a letter to the effect that, in fact, it was signed by several members of the Rockmart congregation and they testified in that, including their signature upon the letter, that they re-garded me as a minister of Jehovah's Witnesses.

" * * *

"Q. How much time did you certify or tell the board you were spending in your church work at that time?

"A. I don't recall.

"Q. Did you tell them or did you just tell them you were a minister?

"A. Well, I don't remember exactly what I told the local board at that time but I'm sure that at that time I was engaged in the field service and in various phases of the ministry."

8. The standard presumably followed by the Board is found in the testimony of Major

categorized principles applied by us and others.

■■ We have, of course, not ruled out those who must seek and hold secular employment. What the Act requires in order for one to qualify for the ministerial exemption is that the ministry be his vocation, not an incidental thing in his life. Pate v. United States, 5 Cir., 1957, 243 F.2d 99, 103. Unlike the status of conscientious objector which depends solely upon the registrant's subjective state of mind, Fitts v. United States, 5 Cir., 1964, 334 F.2d 416, 421, this brings into play objective criteria to determine whether the evidence requires a holding of the ministerial, vocational, status:

"First, the registrant must have the ministry as his vocation rather than his avocation. * * * Second, religious affairs must occupy a substantial part of the registrants time and they must be carried on with regularity. * * * Finally, and most important, in order to obtain an exemption a registrant must stand in the relation of a minister to a congregation or in an equivalent relation as a

recognized leader of a group of lesser members of his faith." Fitts v. United States, supra, 334 F.2d at 421.

Based on these criteria, the evidence presented by Wood in the District Court regarding the nature of his activities[9] fails to satisfy the statutory requirement, and the Court so held.

■ While the District Court at one place in the formal findings found that Wood was a "duly ordained minister" of Jehovah's Witnesses—thus tracking the terminology of the statutory exemption (see note 4, supra)—it is clear that the Judge used this in the general sense that all active members of the sect regard themselves as ministers.[10] The District Court amplified this by also finding that Wood was a "lay member" of Jehovah's Witnesses, and that the evidence was insufficient to show that he was "such a spiritual leader of any group of Jehovah's Witnesses that it could be said it was his vocation." Thus his efforts through court-offered evidence to show that the Board's decision was unsupported in fact not only failed, but really produced an opposite conclusion.

Stephens, the Chief Classification Officer of the Selective Service System in Georgia:

"I have recommended to the local boards in Georgia based upon information received from National Headquarters that we will consider for deferment those that the Watchtower and Bible Tract Society certifies are Pioneers, Congregational Servants, and Assistant Congregational Servants."

To this list might perhaps be added the status of "Book Study Conductor." Wiggins v. United States, 5 Cir., 1958, 261 F.2d 113, 118. The record reflects that Wood had received no such certification. While intimating no opinion as to the validity of these categorical distinctions drawn by the Selective Service System in Georgia, we emphasize that neither in the Board's nor District Court's record is there any evidence indicating that application of them to Wood in this case would be so arbitrary or capricious as to constitute a denial of due process or a result without reasonable basis of fact.

9. Three members of Jehovah's Witnesses testified in Wood's behalf in the District

Court. Their testimony established that Wood was an "assistant congregational book study conductor" in the Atlanta congregation, a position not within the leadership hirachy recognized and certified by the governing body of the sect. Wood engaged in "door to door preaching," "talks and demonstrations of faith in the congregation," and "testifying orally in open discussions." None undertook to say, or imply, that such activities in the eyes of the sect constituted Wood a "duly ordained minister" as Congress defines it. To the contrary, one of the witnesses, when asked about these functions, expressly acknowledged that in these actions Wood was not doing any more than was expected of any other active member of the Witnesses.

10. This is, of course, a factor which alone will neither automatically entitle the registrant to classification as a minister, nor automatically preclude such exemption as fraudulent and unsound on its face. Pate v. United States, 5 Cir., 1957, 243 F.2d 99, 103.

**900**

■ Wood's contention that the District Court erred in denying appointed counsel is without merit. The Court considered Wood's affidavit, denied the appointment of counsel, and offered Wood ample opportunity in advance of trial to retain counsel. Considering the wide discretion inescapably committed in evaluating his financial ability to obtain counsel, we can find no abuse of such discretion here.

■ Nor is there any merit to Wood's First Amendment contention. The ministerial exemption comes from the Congress, not the Constitution. It has been long established that there is no constitutional right to exemption from military service, or from compulsory civilian duty in lieu thereof, by virtue of conscientious objection or religious calling. George v. United States, 9 Cir., 1952, 196 F.2d 445, 449.

Affirmed.