Gary Herndon McCOY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 25118.

United States Court of Appeals
Fifth Circuit.

Nov. 12, 1968.

Rehearing Denied Dec. 5, 1968.

Thomas Gene Clark, Laurel, Miss., for appellant.

Robert E. Hauberg, E. Donald Strange, Asst. U. S. Atty., Jackson, Miss., for appellee.

Before GOLDBERG and AINSWORTH, Circuit Judges, and SPEARS, District Judge.

AINSWORTH, Circuit Judge:

Appellant Gary Herndon McCoy, a Jehovah's Witness, having waived a jury, was tried and convicted by the District Court for refusing to be inducted into the armed forces in violation of 50 U.S.C. App. § 462, and was sentenced to imprisonment for a term of five years.

He registered with his Selective Service board on June 13, 1961, and was classified I-A by the board on June 12. 1962. On December 5, 1963, his classification was changed to II-S (student) and later changed to I-A on July 12, 1965.

On December 10, 1965, he appeared personally before the board, accompanied by three witnesses from his religious group, having previously requested a change to IV-D classification (ministerial).[1]

He was afforded another personal appearance before the board on January 18, 1966, in connection with his request for a change to the ministerial classification and his Selective Service file was reviewed at that time. Appellant stated that he was manager of a mobile trailer concern earning approximately $200 per month. The board members advised him that they considered Regular Pioneer, Special Pioneer, Congregation Servant, and Assistant Congregation Servant eligible for the IV-D classification provided the Watchtower Bible and Tract Society (the incorporated title of the Jehovah's Witnesses' sect) certified that he had been appointed to such a position and he was performing such duties. Appellant informed the board that he did not hold any of these positions but that he was a Vacation Pioneer under a four

1. On November 16, 1965, when registrant came to the board office and requested an appearance before the board, the Clerk's report in the file indicates: "He states that he is not going to the Army, that he will serve 5 years in the Penitentiary, but he is not going into the Army."

In September 1965 he had filed with the board a letter, accompanied by two petitions and other supporting letters of his fellow Jehovah Witnesses pertaining to his activities as a "duly ordained minister of religion." He stated that he was engaged in secular employment by the Masonite Corporation but that this was not his vocation but the ministry was.

months' appointment. Registrant was familiar with the requirements for a Regular Pioneer certificate but stated he was not eligible for such an appointment and had not been preaching long enough to be eligible for such a certificate to be issued. He was told that according to a letter from T. J. Sullivan, Superintendent of Ministers and Evangelists of the Watchtower Society, that a Vacation Pioneer was only a temporary appointment and did not qualify for the IV-D classification, but that registrant would be considered for such classification upon receipt of a certificate of appointment from the Watchtower Society that he was a Regular Pioneer, Special Pioneer, Congregation Servant, or Assistant Congregation Servant. He stated he was aware of the fact that a Vacation Pioneer was only a part-time minister but said he was preaching as a Vacation Pioneer and was putting in the required number of hours to become a Regular Pioneer. He declined to claim conscientious objector status, stating to the board that he would not agree to serve in an institution in lieu of military service. He was then informed by the board that the evidence in the file was insufficient to justify a IV-D classification and that it was the opinion of each member of the board that he be continued in Class I-A.[2] He appealed the classification, and the

2. The following appears in "Summary of Personal Appearance Meeting Gary H. McCoy 22–83–43–68":

On 18 January 1966 Gary H. McCoy, registrant of Local Board No. 83, appeared before the local board seeking to be classified in Class IV-D. Local board members present were Mr. N. L. Shoemaker, Jr., Mr. Aubrey Jones, and Mr. Charles Graham. Also present was Mrs. Essie D. Bullock, clerk. Colonel Shed H. Weeks, Chief, Administrative Division, State Headquarters, Selective Service System, was present to assist the registrant and the local board in proceedings of the personal appearance.

The file of the registrant was briefly reviewed, pointing out that he was classified in Class I-A July 1965 and ordered to report for physical examination 12 August 1965, at which time he claimed to be eligible for IV-D classification. He was later examined on 4 November 1965 and was found acceptable and DD Form No. 62 mailed him on 16 November 1965. On 26 November 1965 the registrant requested an appearance before the local board.

The registrant stated that he was manager of a mobile trailer concern owned by a Mr. Busby and that he had made approximately $200 since he started working at this place in December 1965.

The registrant belongs to the religious organization known as the Watchtower Bible and Tract Society. It was reviewed with him the many positions in that organization commonly known as Servants in the Congregation. It was also pointed out to the registrant that he must meet the criteria as stated in Selective Service regulations to qualify for a IV-D classification. The local board advised him that they considered Regular Pioneer, Special Pioneer, Congregation Servant, and Assistant Congregation Servant eligible to be classified in IV-D, provided there was evidence in the file from the Watchtower Bible and Tract Society to the effect that he had been appointed to that position and was performing the duties as required. The registrant advised that he was neither, but that he was a Vacation Pioneer and had an appointment to that effect at his home but saw no reason for turning this information in. The local board attempted to impress on the registrant that he must be preaching regularly and full time, and it must be his vocation rather than his avocation. The registrant was familiar with the requirements to be issued a Regular Pioneer certificate. He stated that he was not eligible and that he had not been preaching long enough to be eligible for a certificate to be issued, stating that the Vacation Pioneer appointment that he had was for four months.

Colonel Weeks read to the registrant a letter from Mr. T. J. Sullivan, Superintendent of Ministry and Evangelists of the Watchtower Bible and Tract Society dated 14 January 1964, in which was pointed out that ministering as a Vacation Pioneer was only temporary and was on the list as temporary, but that Regular Pioneer and Special Pioneer were permanently on the list. It was further pointed out in this letter that because Vacation Pioneers were only temporary the Society did not issue a certificate covering their ministerial activities. A photostatic copy of this letter was placed in the registrant's cover sheet. The local board again told the registrant that they would consider him for IV-D classifica-

Appeal Board by unanimous vote declined, on May 6, 1966, to change the I-A classification. He was then mailed an order for induction on July 15, 1966, ordering him to report for induction on July 28, 1966, and he reported to the induction station but refused to take the step forward and be inducted into the armed forces.

He specifies a number of errors in connection with his conviction. In the first three of such specifications, he contends that there was no basis in fact for the board to deny him the ministerial classification, that the denial and subsequent refusal to reopen the classification were arbitrary and the result of an erroneous understanding and interpretation of the Universal Military Training and Service Act and Selective Service Act and Selective Service Regulations—all in violation of due process of law—thus that the induction order was void.

██ The scope of review in draft cases is very limited and the range of review is the narrowest known to the law. Clay v. United States, 5 Cir., 1968, 397 F.2d 901, 915; Matyastik v. United States, 5 Cir., 1968, 392 F.2d 657, 658. The courts do not sit as super draft boards, substituting their judgments on the weight of the evidence, nor should they look for substantial evidence to support such determinations. Clay v. United States, 5 Cir., 1968, 397 F.2d 901, 916 (and cases cited therein).

In the leading case of Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946), the Supreme Court said:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." [3]

██ The registrant bears the burden of clearly establishing his right to the ministerial exemption and the board has no affirmative duty to ascertain whether or not the registrant qualifies for the ex-

---

tion provided he could submit evidence to the effect that he was preaching full time, and that evidence should be in the form of an appointment by the Watchtower Bible and Tract Society as a Regular Pioneer, Special Pioneer, Congregation Servant, or Assistant Congregation Servant. The registrant stated that he was aware of the fact that a Vacation Pioneer was only a part-time ministry, although at the time he was preaching as a Vacation Pioneer he was putting in the required number of hours to become a Regular Pioneer.

It was also noted that the registrant failed to make official claim as a conscientious objector and stated that he was questioned concerning this matter, but he stated that he could not file a claim as a conscientious objector as stipulated on SSS Form No. 150 (Special Form for Conscientious Objectors). He stated that he had been a member of the Jehovah's Witnesses for about five years, and the reason he could not sign the SSS Form No. 150 was that he would be agreeing to serve in an institution, which he was against. He again stated in the presence of all present that he did not desire to file claim as a conscientious objector.

The local board, in the registrant's presence, advised him that the evidence that was in his file did not in their opinion justify his being placed in Class IV–D, and it was the opinion of each member of the local board that his case not be reopened and that he be continued in Class I–A. The local board clerk was instructed to mail SSS Form No. 110 to the registrant continuing him in Class I–A.

FOR THE LOCAL BOARD
/s/ ESSIE D. BULLOCK
Essie D. Bullock, Clerk
Local Board No. 83
Waynesboro, Mississippi.

3. The statutory provision referred to is 50 U.S.C.App. § 460(b)(3), which states that "The decisions of such local board shall be final * * *."

emption. Clay v. United States, 5 Cir., 1968, 397 F.2d 901, 916; Wood v. United States, 5 Cir., 1967, 373 F.2d 894, 897, reversed on other grounds, 389 U.S. 20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967); Matyastik v. United States, 5 Cir., 1968, 392 F.2d 657, 658.

■ The Act provides that regular or duly ordained ministers [4] of religion shall be exempt from service. 50 U.S.C.App. § 456(g).[5] See also Selective Service Regulations, 32 C.F.R. § 1622.43. There must be regularity of religious activities, a ministerial vocation rather than an avocation, and a recognized standing as a minister to a congregation or leader of a group of lesser members of his faith. Clay v. United States, supra at 917; Wood v. United States, supra at 899; Fitts v. United States, 5 Cir., 1964, 334 F.2d 416, 421.

In recent cases we have consistently approved the "basis in fact" test in connection with classification of draft registrants by local boards. Clay v. United States, supra at 917; Wood v. United States, supra at 897; Greer v. United States, 5 Cir., 1967, 378 F.2d 931, 933; Foster v. United States, 5 Cir., 1967, 384 F.2d 372, 373; Jones v. United States, 5 Cir., 1968, 387 F.2d 909, 911; Matyastik v. United States, 5 Cir., 1968, 392 F.2d 657, 658; Merritt v. United States, 5 Cir., 1968, 401 F.2d 768.

Having in mind these precepts of the law repeatedly adhered to by this Court, we have examined the record to determine whether there was any basis in fact upon which the board properly declined to grant appellant a ministerial exemption. When appellant originally registered with the draft board in June 1962, he showed his occupation as "laborer on seismograph crew." In a written response to the Current Information Questionnaire mailed him by the board and filed on July 7, 1965, registrant stated his occupation to be that of an employee of Wayne Manufacturing Company, Waynesboro, Mississippi, as a "hopper

---

4. These terms are defined in the Act (50 U.S.C.App. § 466(g)) as follows:

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

5. 50 U.S.C.App. § 456(g):

"Regular or duly ordained ministers of religion, as defined in this title [sections 451-454 and 455-471 of this Appendix], and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from training and service (but not from registration) under this title [said sections]."

tender" at an electric blanket manufacturing company. There was yet no mention of ministerial activities and registrant continued to be classified I-A. It was not until September 1965 that the registrant first claimed a ministerial classification. Letters and petitions from fellow Jehovah's Witness members of his congregation supported his request for such an exemption as an ordained minister. The Watchtower Society certification dated November 23, 1965, showed that he was one of three Book Study Conductors in his Waynesboro, Mississippi, unit. Book Study Conductor is the lowest ranked position in the congregation. It also showed that the Congregation Servant was Fonda Busby and the Assistant Congregation Servant was Riley B. Cochran. These positions are substantially similar to a pastor and assistant pastor of an orthodox church.

The board informed the registrant that he should submit evidence to the effect that he was preaching full time and that the evidence should be in the form of an appointment by the Watchtower Society as a Regular Pioneer, Special Pioneer, Congregation Servant, or Assistant Congregation Servant. This accorded with the directive issued for the Mississippi State Selective Director by Major Shed H. Weeks, Chief, Administrative Division, dated April 9, 1964, which in turn referred to a memorandum to the National Selective Service Appeal Board dated June 25, 1958, by Hayden Covington, General Counsel of Jehovah's Witnesses, in which Mr. Covington stated that the Society would not contend for a IV-D classification except for those who qualify as Pioneers and as a Congregation Servant and who are also devoting their time to ministerial work of Jehovah's Witnesses sufficiently to claim that it is their vocation rather than their avocation. A Regular Pioneer is required to put in an average of 100 hours per month for a total of 1,200 hours annually to ministerial work, and a Special Pioneer is required to put in an average of 150 hours per month. According to a letter from T. J. Sullivan, Superintendent of Ministers and Evangelists in National Headquarters of the Watchtower Society, dated January 14, 1964 (referred to in the Mississippi State Selective Service Directive), Regular and Special Pioneers are permanently on the Pioneer List but Vacation Pioneers are on the Pioneer List temporarily. Mr. Sullivan's letter described Vacation Pioneers as follows: "It is an arrangement whereby persons can engage in the Pioneer ministry for shorter periods, such as when one is on vacation or when one is free for a month or two or longer and can engage in the Pioneer ministry." And he advised that "Those in the Regular or Special Pioneer service can be given a regular Certificate after a period of time and they are directed to have a photostatic copy of it made and file it with their local draft board or State Headquarters." Among other things, the Selective Service Directive pointed out that all members of the Jehovah's Witness religious sect are ordained ministers.

■ It is not difficult, therefore, to ascertain a basis in fact for the local board's classification. It is found, among other things, in the failure of registrant McCoy to qualify within the hierarchy of his own religious sect for appointment to a position which the Watchtower Society believed would render him eligible for the IV-D classification. Therefore, even within his own religious sect, though considered an ordained minister (as are all members), his activities did not merit a certificate from the Watchtower Society itself sufficient to merit recognition for the ministerial exemption within the statutory requirements of the Act. 50 U.S.C.App. § 466(g) (2). The registrant, therefore, did not "stand in the relation of a minister to a congregation or in an equivalent relation as a recognized leader of a group of lesser members of his faith" considered critically important and necessary in our holding in Fitts v. United States, 5 Cir., 1964, 334 F.2d 416, 421, approved in Wood v. United States, 5 Cir., 1967, 373 F.2d 894, 899, reversed on other grounds, 389 U.S.

20, 88 S.Ct. 3, 19 L.Ed.2d 20 (1967); Greer v. United States, 5 Cir., 1967, 378 F.2d 931, 933; Matyastik v. United States, 5 Cir., 1968, 392 F.2d 657, 660; and Clay v. United States, 5 Cir., 1968, 397 F.2d 901, 917.[6]

In May 1966 the registrant filed with the board a "Certificate for Servant in Congregation" of the Watchtower Society, stating that he had been duly ordained and presently officiates as an assistant presiding minister of the Waynesboro, Mississippi, Congregation of Jehovah's Witnesses, and that he has been serving since January 26, 1966, as the Magazine-Territory Servant, and since November 23, 1965, as the Book Study Conductor for this congregation.[7] It is

---

6. Appellant's reliance on Wiggins v. United States, 5 Cir., 1958, 261 F.2d 113, is misplaced. The case is distinguishable on the facts. We conclude on the totality of the facts that *Wiggins* is inapposite as we did in our consideration of all the facts in Fitts v. United States, 5 Cir., 1964, 334 F.2d 416, 420; Wood v. United States, 5 Cir., 1967, 373 F.2d 894, 898; and Matyastik v. United States, 5 Cir., 1968, 392 F.2d 657, 660, where we distinguished *Wiggins* from each of the cited cases. There is no question involved here of the ministerial exemption being denied appellant McCoy, as in *Wiggins*, because he was not paid for his ministerial work. Here the file affirmatively showed that appellant McCoy did not have the recognized standing of a minister or leader of lesser members of his congregation sufficient in his own sect (the Watchtower Society) to justify the IV-D ministerial exemption, and the extent of his activities was largely unsupported and conflicting.

7. In a subsequent letter filed by appellant with the board on July 27, 1966 (one day prior to the date set for his induction into the armed forces), he described the duties of Book Study Conductor and Magazine-Territory Servant as follows:

"As an appointed Book Study Conductor of the local Congregation I not only have the responsibility of conducting the Bible study each week but I must also take the lead in the preaching activity of my study group. I must maintain a list of names of all the publishers assigned to my service center, so that I can help each one in any manner needed, either meeting attendance or participation in the field ministry.

"On the first and fifteenth of each month the assistant Congregation servant provides me with a list of publishers who have not engaged in the field ministry up to that time or during the previous month or who need assistance to improve the effectiveness of their ministry. It is my duty to then try to determine the publisher problem and work with him in the field ministry so that I may give him appropriate counsel and aid in overcoming his problem. If there are any in the group who are not accustomed to house-to-house witnessing, I must give them assistance, and help them to overcome any problem they might have.

"It is also my responsibility as Study Conductor to hold territory around the service center for those who work with me in group witnessing on weekends or before the study in the evening.

"Respectfully,

/s/ Gary Herndon McCoy"

"As Magazine-Territory Servant it is my duty to look after the distribution of magazines as well as look after the territory assigned to the congregation by the society. It is required that I be keenley [sic] interested in the distribution of magazines, both the Watchtower and Awake! and I must encourage publishers to participate in their distribution. It is also necessary that I appreciate the importance of all phases of the magazine work.

"As Magazine-Territory Servant I must ascertain the needs of each publisher in the way of magazines. This is a regular standing order. Upon receipt of the magazines I must count them, check the label on the package and inform the account servant of the issue and the number of magazines recieved [sic]. At the first meeting after the magazines are recieved [sic] I must distribute them to the publishers according to their orders. I am also responsible for determining the number of handbills needed for each public meeting.

"The assignment of territory is also my responsibility. All Congregation territory is subdivided into small sections, the size of which is determined by the type of territory and local circumstances.

"Pioneers working with the Congregation, study conductors and individual publishers must get their territory through me. Every four months the territory must be returned to me for checking. It is my responsibility to see that the territory is regularly covered with campaign literature and magazines and that

pertinent here to point out that a Servant in Congregation, such as a Magazine-Territory Servant and Book Study Conductor, is not in the same category of rank as a Congregation Servant. The Congregation Servant is the leader of the congregation and corresponds to the pastor of a regular church. There are numerous Servants in Congregation, and these are not in the top rank of positions of a Jehovah's Witness unit. Magazine-Territory Servant and Book Study Conductor are not among the positions which the Watchtower Society itself contends entitle one to a IV-D ministerial classification, since they are neither Pioneers nor Congregation Servants.

■ At no time in appearances before the board, including the December 10, 1965 and January 18, 1966 meetings, did appellant state the number of hours he was devoting to ministerial activities. Not until January 28, 1966, when he appealed the board's decision which declined to reclassify him from the I-A to IV-D classification, did he first assert the number of hours per month devoted to such activities. At that time he wrote that "in all phases of the ministry I spend approximately fifty hours each month." In his letter to the Appeal Board he stated that he was unable to obtain a Regular Pioneer certificate because of the 100 hour per month requirement of actual preaching to the people, and wrote, "It can readily be seen that this precludes a Pioneer from having steady and regular secular employment." Nevertheless, he had secular employment then, as he did during the period involved in this case, until the time of

his induction when it appeared he was not employed in secular employment. Such employment was continuous from July 1964 to June 1966. His Statement of Personal History disclosed that he was employed from June to September 1963 by Spencer Hudson, Waynesboro, Mississippi; from July 1964 to July 1965 by Wayne Manufacturing Company, Waynesboro, Mississippi; from July 1965 to December 1965 by Masonite Corporation, Laurel, Mississippi; and from December 1965 to June 1966 by Busby Mobile Homes, Waynesboro, Mississippi. In the statement he wrote that since his ordination in April 1964 his vocation had been the Christian ministry and that each change in his secular employment had been made for the purpose of better carrying out his ministerial duties. Of course, we recognize that since ministers of Jehovah's Witnesses are not paid they must have employment to sustain themselves. See Greer v. United States, 5 Cir., 1967, 378 F.2d 931, 933.

■ In the letter filed with the local board on July 27, 1966, the day prior to his scheduled induction, he stated that from July 1965 to July 1966 he spent an average of 91 hours in ministerial duties, and from February 1965 to July 1966 he averaged approximately 116 hours per month. The hourly totals were in no way supported, nor was there any detailed itemization or breakdown of the computation. At his trial he stated that he averaged about 76 hours per month. He conceded he was unable to obtain a Pioneer's certificate because he could not put in the 100 hours per month required by the Watchtower Society for appoint-

the back calls and Bible studies in it are being properly cared for. I must also arrange for group witnessing seeing that territory not otherwise taken out by publishers is covered.

"In my capacity as Magazine-Territory Servant for the Waynesboro, Mississippi Congregation, South Unit, it is my responsibility to see that the Good News of God's Kingdom is preached regularly to all of Wayne County Mississippi, a part of Clark County Mississippi, and all of Choctaw County Alabama. Also when

interest is found in an area not served by a Kingdom Hall it is my responsibility to suggest to the Congregation servant the best location for a public meeting to be held. It is my responsibility to see that the aforementioned territory is covered twice a year if possible. It is also my responsibility to put into operation any proper means of advertising the King and the Kingdom which would cause no great expense to the Congregation.
"Respectfully,
/s/ Gary Herndon McCoy"

ment to that position, and said that in computing the 116 hour per month figure, he included time taking magazines around to different houses which he considered part of his ministerial duties. At his trial he stated that his secular employment totaled about 20 hours a week.

In our view the facts were such that the local board was well within its authority in denying the registrant a ministerial classification. He had not obtained a position which the Watchtower Society itself would certify was sufficient to merit a IV-D classification and he had not put in the 100 hours per month of field work required for the Regular Pioneer ministry which would have entitled him to such a classification. He failed, therefore, to prove that he was entitled to the ministerial classification and, accordingly, there was more than sufficient basis in fact for the board's decision.

We are not authorized to weigh the evidence in draft board cases of this kind, nor do we apply the clearly erroneous or substantial evidence test to the facts which the local draft board had before it. In the narrow review which we are authorized to make of draft board decisions, we look only to see if there was a basis in fact to support the ultimate classification. We are satisfied such a basis existed in this case.

There is no merit in the contention that Colonel Weeks of the Mississippi State Selective Service Department usurped the functions of the board in connection with appellant's classification. Colonel Weeks' testimony at the trial clearly shows that he merely advised the board and the members made up their own minds as to what the classification should be, without any recommendation on his part.

The last specification of error pertains to the contention that counsel should have been provided for appellant during his appearance before the local board and other phases of the Selective Service process. Proceedings before draft boards are not stages in a criminal prosecution, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), cited by appellant, are clearly inapposite. Selective Service Regulations, 32 C.F.R. § 1624.1(b),[8] provide that a registrant is not entitled to assistance of counsel in appearances before the board. The Sixth Amendment right to the assistance of counsel in all criminal proceedings is not applicable here. Merritt v. United States, 5 Cir., 1968, 401 F.2d 768; United States v. Capson, 10 Cir., 1965, 347 F.2d 959.

Affirmed.

8. 32 C.F.R. § 1624.1(b):
"No person other than a registrant shall have the right to appear in person before the local board, but the local board may, in its discretion, permit any person to appear before it with or on behalf of a registrant: *Provided,* That if the registrant does not speak English adequately he may appear with a person to act as interpreter for him: *And provided further,* That no registrant may be represented before the local board by anyone acting as attorney or legal counsel."