**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Drew Carter COOK, Defendant-Appellant.
No. 27443
Summary Calendar.**

United States Court of Appeals
Fifth Circuit.
July 31, 1969.

**222**

Paul L. Wayman, Atlanta, Ga., for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and THORNBERRY and MORGAN, Circuit Judges.

MORGAN, Circuit Judge:

Pursuant to new Rule 18 of the Rules of this court, we have concluded on the merits that this case is of such character as not to justify oral argument and have directed the clerk to place the case on the Summary Calendar and to notify the parties in writing. See Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, Part I.

Appellant was indicted for refusal to be inducted into the Armed Forces of the United States in violation of 50 U. S.C. App. § 462.[1] He entered a plea of not guilty, was tried before the District Court without a jury, convicted, and sentenced to the custody of the Attorney General for a term of five years under the provisions of 18 U.S.C. § 4208(a)(2), making him eligible for parole at any time.

On November 2, 1964, registrant Cook completed SSS Form 100, Classification Questionnaire. In Series VIII of that form, he claimed to be conscientiously opposed to war, and requested a Special Form for Conscientious Objector (SSS Form 150). He also claimed to have been a minister of Jehovah's Witnesses since September 13, 1959, at which time he would not have been quite 13 years of age. He was a high school student scheduled to graduate in June, 1965. Also, he was employed at a service station for 25 hours per week, having been so employed since 1963.

In completing various Forms 127, Current Information Questionnaire, which were forwarded to him by his local board from time to time, the registrant furnished the following information concerning his occupation:

1. On June 8, 1965, he was employed part time at a service station.

<hr />

1. 50 U.S.C.App. § 462(a) provides, in pertinent part:

"[A]ny person who * * * evades or refuses registration or service in the armed forces or any of the requirements of this title * * * or who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in execution of this ti-

tle * * * or rules, regulations or directions made pursuant to this title * * * shall, upon conviction in any district court of the United States of competent jurisdiction, be punished by imprisonment for not more than five years or a fine of not more than $10,-000, or by both such fine and imprisonment * * *."

He claimed this was "to support my ministry".

2. On November 11, 1965, he was a "parts man" for City Dodge, Decatur, Georgia.

3. On February 12, 1966, he was a "plumber and electrician".

4. On December 7, 1966, he was an assembler of light fixtures for Lithonia Lighting, Inc., Lithonia, Georgia.

5. On March 24, 1967, he left blank the space for answering three of the first four questions of Series IV, SSS Form 127, pertaining to his occupation. Question 2 of Series IV is: "I do the following kind of work in my present job. (Be specific. Give a brief statement of your duties)." He answered this question: "I work part time and am devoting full time to ministry".

On November 16, 1964, the registrant returned to the board SSS Form 150, Special Form for Conscientious Objector, in which he claimed exemption from both combat and non-combat training and service in the armed forces, subject to his claim as a minister.

The registrant was classified I–S (Student) on January 20, 1965, and on August 18, 1965, he was classified I–O (Conscientious Objector) by his local board.

On September 21, 1965, Cook was given a personal appearance before his local board. He questioned his I–O classification and asked to be classified IV–D. Cook was informed that under the Selective Service regulations he would not be considered for IV–D classification until he could bring a 100-hour Pioneer Certificate from his church, Jehovah's Witnesses. The Executive Secretary of the local board explained at the trial that rather than "under Selective Service regulations", she meant "under the practices of Selective Service".

On December 14, 1965, registrant Cook was given a physical examination, at which time he was found to be qualified for induction.

On July 26, 1966, Cook met with his local board for the purpose of reaching an agreement as to what type of civilian work he would perform in lieu of induction. However, no agreement was reached because registrant Cook informed the board he could not perform any type of work because his conscience would not permit him to perform any such work.

On August 26, 1966, Cook's file was forwarded to the Appeal Board for the Northern District of Georgia, and the Appeal Board, on October 7, 1966, also classified Cook I–O, but did not grant him his IV–D classification.

In response to inquiries by the local board, on November 30, 1966, Delaware State Hospital advised Cook's local board that it would employ registrant in any of the following vacancies: "attendants in the nursing department, janitorial service in the dietary division, and janitors in housekeeping".

On December 5, 1966, the local board advised Cook that civilian work was available to him in maintenance, institutional, or hospital work at Delaware State Hospital. However, on December 9, 1966, Cook wrote to his local board: "I, Drew C. Cook, do not offer to perform work designated to me by local board 111".

Thereafter, on January 24, 1967, at the board's request, Cook met with the board and a representative of the State Director of Selective Service. At this meeting Cook advised the board that he could not accept any type of work offered to him by the board. The board considered and determined appropriate institutional work as the type of civilian work which Cook should perform in lieu of induction.

On March 27, 1967, the local board mailed registrant Cook an order to report to his board on April 10, 1967, for instructions to proceed to his place of employment, Delaware State Hospital, New Castle, Delaware. He was ordered to report for employment pursuant to instructions of the local board and to re-

main in such employment for 24 consecutive months or until such time as released or transferred by proper authority.

On April 10, 1967, Cook reported to his local board but refused to be forwarded to report for civilian work at Delaware State Hospital, and did not report for such work.

Appellant Cook asserts: (1) that the evidence submitted by him to the local board entitled him to IV–D (ministerial) classification rather than a I–O (conscientious objector) classification; (2) that the local Selective Service board invoked an erroneous and improper standard in denying him a IV–D classification, and (3) that the order to report for civilian work was invalid because he had not been given a physical examination during the 15 months prior to being ordered to Delaware State Hospital.

■ A perusal of the record in the case at hand indicates that the local board did have a "basis in fact" for denying Cook the IV–D classification. A ministerial exemption is a matter of legislative grace, and Cook, the registrant, bore the burden of clearly establishing the right to the exemption. Dickinson v. United States, (1953) 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132.

■ The Selective Service Act provides that a regular or duly ordained minister [2] or religion shall be exempt from service. 50 U.S.C. App. § 456(g).[3] See also Selective Service Regulations, 32 C.F.R. § 1622.43. There must be regularity of religious activities, a ministerial vocation rather than an avocation, and a recognized standing as a minister to a congregation or leader of a group of lesser members of his faith. McCoy v. United States, (5 Cir., 1968) 403 F.2d 896; Fitts v. United States, (5 Cir., 1964) 334 F.2d 416, 421.

■ Having in mind these precepts of the law repeatedly adhered to by this Court, we have examined the record to

---

2. These terms are defined in the Act (50 U.S.C.App. § 466(g)) as follows:

"(1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

"(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister.

"(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite or discipline of a church, religious sect or organization, but who does not regularly as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

3. 50 U.S.C.App. § 456(g):

"Regular or duly ordained ministers of religion, as defined in this title [sections 451–454 and 455–471 of this Appendix], and students preparing for the ministry under the direction of recognized churches or religious organizations, who are satisfactorily pursuing full-time courses of instruction in recognized theological or divinity schools, or who are satisfactorily pursuing full-time courses of instruction leading to their entrance into recognized theological or divinity schools in which they have been pre-enrolled, shall be exempt from training and service (but not from registration) under this title [said sections]."

determine whether there was any basis in fact upon which the board properly declined to grant Cook a ministerial exemption.

The registrant here made no claim to being the head of a congregation, a Congregation Servant in the Jehovah's Witnesses faith. He did not even claim to hold one of the numerous positions found in small Jehovah's Witnesses congregations, such as Assistant Congregation Servant, Theocratic Ministry Instructor, Advertising Servant, or Book Study Conductor. His Selective Service file shows that he consistently held secular employment. Nevertheless, he apparently contends that he should be classified as a minister on the basis of mere ordination, which occurred at the time he was thirteen years of age. He was active in his church, but was not very specific as to how much time he spent in its work. Under the evidence presented, he clearly did not carry the burden of establishing the right to the ministerial exemption. Dickinson v. United States, supra.

■ The contention of appellant registrant that the local board erred in informing him that the Selective Service regulations required that he produce a 100-hour Pioneer Certificate from his church, Jehovah's Witnesses, is without merit. Assuming that the local Selective Service board did use the production of this certificate as a standard in considering Cook's classification as IV–D, appellant later had the benefit of a de novo classification by the State Appeal Board, and any improper standard utilized by the local board was completely superseded by the Appeal Board in denying a IV–D classification to Cook. See United States v. Henderson, 411 F. 2d 224 (5 Cir., 1969).

■ There is no merit in Cook's contention that his order was invalid because he had not been afforded a physical examination during the preceding 15-months period prior to the order requiring him to report for civilian work. There is no requirement in the Selective Service regulations that a registrant be given a physical examination within any particular period of time before the date he is ordered for induction or civilian work. Section 1660.20 of these regulations provides that within 10 days after being found qualified for military service, a registrant who is classified I–O shall advise the board of three types of work which he is qualified to do and which he offers to perform. This regulation further provides that if the registrant does not take this action, the board shall submit to the registrant three types of civilian work. Registrant Cook did not report to the Delaware State Hospital and, because of his own actions, it was never determined whether he would have passed its physical examination. He was not ordered to report to the armed forces, so it is irrelevant whether he would have passed its physical examination. Cook was clearly not prejudiced here, as he had made it clear, in writing, to the local board that he would not accept any civilian work designated to him by Local Board 111.

There being no merit to any of appellant's contentions, the judgment of the District Court is

Affirmed.